**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: ONE DIGITAL DEVICE CURRENTLY LOCATED AT 601 4TH STREET NW, WASHINGTON, DC UNDER RULE 41 | SW No. 24-sw-091<br><br>UNDER SEAL |

**UNITED STATES' MEMORANDUM IN SUPPORT OF AN APPLICATION**
**UNDER RULE 41 FOR A WARRANT TO SEARCH**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of the above-captioned search warrant. The Fourth Amendment "does not prohibit the government from seeking a second magistrate's approval to search when another magistrate denies a search warrant." *United States v. Pace*, 898 F.2d 1218, 1230 (7th Cir. 1990). The only relevant determination for Fourth Amendment purposes is whether the application before the Court supports probable cause to search the digital device and states with particularity the things to be searched. The government has satisfied these elements. Indeed, U.S. Magistrate Judge Robin M. Meriweather already found that the government established these elements on two prior occasions. The denial of a similar search warrant in the Central District of California does not preclude this Court from issuing the requested search warrant under the Fourth Amendment and Federal Rule of Criminal Procedure 41.

The Court should also maintain the ex parte nature of this proceeding even though the defendant has been arrested and is now represented by counsel. Disclosing the existence and scope of this search warrant application would afford the defendant the opportunity to delete digital evidence, which she has done before in the immediate aftermath of January 6, 2021. The government therefore has a compelling interest in preserving the confidentiality of this proceeding until the warrant is executed.

1

## BACKGROUND

On January 6, 2021, a riot at the U.S. Capitol interrupted the certification of the 2020 presidential election. The defendant, Isabella Maria DeLuca, participated in that riot. Around 4:24 p.m., DeLuca entered the restricted area on the temporary inaugural platform constructed on the Lower West Terrace of the U.S. Capitol. From there, DeLuca continued to descend the inaugural platform. Around 4:30 p.m., DeLuca arrived in an area near the Lower West Terrace Tunnel (the "Tunnel") and outside of Senate Terrace Room 2 Mezzanine ("ST-2M"), a hideaway office used by members Congress and their staffs. Although ST-2M was unoccupied on January 6, it is considered a sensitive location that is not open to members of the public. For the next several minutes, DeLuca used her cell phone to record video and/or take photographs outside of ST-2M, witnessing rioters inside the room steal pieces of furniture, including a lamp and a chair, and passing them to the rioters outside. DeLuca then followed suit, entering ST-2M through a broken window and passing a coffee table out of another broken window. As DeLuca continued to use her cell phone to film, rioters passed the table in the direction of the Tunnel where it was used as a weapon against law enforcement officers.

On February 28, 2024, U.S. Magistrate Judge Robin M. Meriweather of the U.S. District Court for the District of Columbia found probable cause that DeLuca violated 18 U.S.C. §§ 641, 2 (theft of government property and aiding and abetting theft of government property); 18 U.S.C. § 1752(a)(1) (entering or remaining in restricted buildings or grounds); 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds); 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct in the Capitol Buildings); and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in a Capitol Building) (the "Target Offenses"). *See United States v. DeLuca*, No. 24-mj-00074, ECF No. 1.

Judge Meriweather also issued a Rule 41 search warrant for DeLuca's person and apartment in Washington, D.C., including any digital devices containing evidence of the Target Offenses.[1] This warrant specifically covered DeLuca's current cell phone, which is the subject of the above-captioned search warrant (the "Target Device"). Law enforcement subsequently determined, however, that DeLuca was staying with another individual in Irvine, California. While law enforcement investigated DeLuca's whereabouts, the search warrant expired on March 12, 2024. The government resubmitted the search warrant with minor amendments and Judge Meriweather reissued it on March 13, 2024.[2] The Federal Bureau of Investigation ("FBI") executed the search warrant at DeLuca's apartment on March 15, 2024, seizing two mobile digital devices, but not the Target Device.

To locate and arrest DeLuca, on March 1, 2024, the government also obtained a search warrant for historical and prospective cell site location information on the Target Device.[3] Upon confirming that DeLuca was staying with another individual at an apartment in Irvine, California, the FBI planned to arrest DeLuca at the apartment on March 15, 2024. The plan included seizing any digital devices incident to arrest and transporting them back to the FBI's Washington Field Office, the primary agency leading the investigation of DeLuca.

The government nonetheless decided, out of an abundance of caution, to obtain a search warrant for the Target Device in the U.S. District Court for the Central District of California. This warrant would have enabled to government to begin the search of the phone, including data

---

[1] *See In the Matter of the Search of One Premises and One Person Including Any and All Digital Devices Owned, Used, or Controlled by that Person Under Rule 41*, No. 24-SW-055, ECF No. 2.

[2] *See id.*, ECF No. 6.

[3] *See In the Matter of the Search of the Monitoring of Global Positioning System Information and Cell Site Location Data for One Cell Phone Account Stored at Premises Controlled by One Provider and Search of Information Associated with These Numbers Pursuant to 18 U.S.C. §§ 2703 and 3123 for Investigation of Violation of 18 U.S.C. § 641*, No. 24-SC-465, ECF No. 4.

3

extraction, immediately. The government also sought warrants to search DeLuca's person and to search the premises where DeLuca was staying in the event she was arrested and left the Target Device in the apartment. Those search warrants were substantially similar to the warrants submitted to, and signed by, Judge Meriweather on February 28 and March 13. The only material difference was additional information on DeLuca's travel to, and location in, California.

On March 14, 2024, U.S. Magistrate Judge Autumn Spaeth of the U.S. District Court for the Central District of California denied the search warrants in their entirety and without explanation. The undersigned Assistant U.S. Attorney respectfully asked the court whether the warrants could be amended or whether there was a substantive issue with probable cause, but never received a response.

On March 15, 2024, the FBI arrested DeLuca in a common area of the apartment building as she was retrieving a package. The Target Device was seized incident to arrest and transported to the FBI's Washington Field Office, where it is currently stored.

The government now seeks this warrant to search the Target Device. In its application, the government disclosed the fact that Judge Spaeth had denied a similar warrant. The government also provided this Court with copies of the denied search warrants. On March 21, 2024, the Court requested briefing on whether it has the authority to issue this warrant given Judge Spaeth's prior denial of a similar warrant.

### ARGUMENT

I.  **The Court Has Authority to Issue the Requested Search Warrant Under the Fourth Amendment and Federal Rule of Criminal Procedure 41.**

Nothing in the Fourth Amendment or Federal Rule of Criminal Procedure 41 precludes the Court from granting a successive search warrant application. The Warrant Clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath

4

or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court has long explained that the "precise and clear" words of the Warrant Clause require "only three things" for the issuance of a warrant: it must be issued by a neutral magistrate; it must be based on a showing of "probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense"; and it must satisfy the particularity requirement. *Dalia v. United States*, 441 U.S. 238, 255 (1979). Nothing more is required. That is why, under Rule 41, a magistrate judge "*must* issue the warrant if there is probable cause to search for and seize a person or property." Fed. R. Crim. P. 41(d)(1) (emphasis added).[4]

Here, the requested warrant satisfies these three elements. First, there is no dispute that this Court is a neutral and detached magistrate. Second, Attachment A identifies with particularity the property to be searched; it is limited one specific Target Device, describing its location and its make, model, and case. And Attachment B identifies with particularity the items to be seized; it is limited to evidence related to the commission of the Target Offenses. It further specifies the type of evidence that may be seized, to include, among other things, text messages, video, photographs, and social media, etc. from the narrow time period of November 3, 2020 to March 31, 2021.

Third, a magistrate judge considering the warrant application must determine whether, in light of all the circumstances described in the supporting affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The affidavit establishes probable cause to believe that the information identified

---

[4] Rule 41 itself "reflects '[t]he Fourth Amendment's policy against unreasonable searches and seizures.'" *Zurcher v. Stanford Daily*, 436 U.S. 547, 558 (1978) (quoting *United States v. Ventresca*, 380 U.S. 102, 105 n.1 (1965)). *See also United States v. Haywood*, 464 F.2d 756, 760 (D.C. Cir. 1972) (stating that "Rule 41 embodies standards which conform with the requirements of the Fourth Amendment").

in Attachment B and located in the place described in Attachment A will constitute evidence of the

Target Offenses. The defendant possessed a mobile digital device while at the U.S. Capitol on

January 6, 2021, using that device on multiple occasions to record video and/or take photographs.

*See* Ex. 1 at 6-9; Ex. 2 ¶¶ 47-51.[5] Specifically, the defendant recorded video outside of ST-2M,

witnessing rioters inside the room steal pieces of furniture, including a lamp and a chair, and

passing them to the rioters outside. *See* Ex. 1 at 7-8; Ex. 2 ¶ 48. This video could provide evidence

of the defendant's state of mind when she entered ST-2M through a broken window and did the

exact same thing—stealing a table and passing it to rioters outside where it was subsequently used

as a weapon against law enforcement officers. The defendant also used social media on that device

to communicate with others about travel to Washington, D.C. and the events at the U.S. Capitol on

January 6, 2021. *See* Ex. 1 at 2-4, 15; Ex. 2 ¶¶ 41-43, 57-61. According to business records, the

defendant has an Apple iCloud account, which would allow her to transfer messages, videos, and

photographs seamlessly from one digital device to another, including the Target Device. The

government has therefore demonstrated ample probable cause to believe that the Target Device

likely holds evidence of the Target Offenses and possibly other related offenses.

Accordingly, if the Court finds that the instant application complies with the requirements

of the Fourth Amendment's Warrant Clause and Rule 41, then the Court must issue the search

warrant as requested. *See* Fed. R. Crim. P. 41(d)(1); *see also Bank of Nova Scotia v. United States*,

487 U.S. 250, 255 (1988) ("federal courts have no more discretion to disregard [a] Rule's mandate

than they do to disregard constitutional or statutory provisions"). Indeed, Judge Meriweather

---

[5] "Ex. 1" refers to the Statement of Facts filed in *United States v. DeLuca*, No. 24-mj-00072, ECF No. 1, which is attached as Exhibit 1 to the above-captioned search warrant application. "Ex. 2" refers to the search warrant that was issued by Judge Meriweather on March 13, 2024, which is attached as Exhibit 2 to the above-captioned search warrant application.

properly found that the government established these elements *twice* when she issued a similar search warrant on February 28 and reissued it on March 13. The denial of the search warrant—despite all the requirements being met—deprives the government of crucial evidence in an ongoing investigation.

This conclusion is bolstered by the Seventh Circuit's decision in *United States v. Pace*, 898 F.2d 1218 (7th Cir. 1990), the only circuit court decision considering the propriety of a successive search warrant application after the first one was denied. *Pace* involved a narcotics distribution investigation. During that investigation, the government submitted a warrant to search an office used by the defendant. The search warrant relied on surveillance of the defendant's daily routine: the defendant would drive circuitously to the office building, enter the office for a brief period, leave the office, make calls on a pay phone, and meet people (some of whom were known cocaine dealers) at restaurants, bars, and parking lots. *Id.* at 1224-25. A magistrate judge denied the warrant, finding that the affidavit did not establish probable to search the office. The government then presented the same warrant to the chief magistrate judge after the magistrate judge said he did not object to another judge reviewing the affidavit. *Id.* at 1225. The chief magistrate judge issued the warrant, and the search of the office uncovered cocaine and associated paraphernalia. *Id.* On appeal, the defendant contended that the district court erred by denying his motion to suppress the evidence found when law enforcement agents searched his office.

The Seventh Circuit rejected the defendant's argument that the magistrate judge's denial was final and binding, and therefore estopped the government from resubmitting the same search warrant application:

> [The defendant], in essence, is asking us to suppress evidence from a search conducted pursuant to a warrant issued by a "detached and neutral magistrate" who properly (we presume) found that probable cause existed to search, simply because another magistrate had refused to issue a warrant based on the same showing by the

7

> government. But, assuming that probable cause actually existed and the government withheld no material information, the government did all the Fourth Amendment required.
>
> The Fourth Amendment on its face does not prohibit the government from seeking a second magistrate's approval to search when another magistrate denies a search warrant. The Fourth Amendment commands only that a "neutral and detached magistrate" determine that probable cause exists. Thus, the important questions, from a Fourth Amendment standpoint, are whether the magistrate really was "neutral and detached," and whether probable cause actually existed, *not how many magistrates the government applied to before finally obtaining a warrant*.

*Id.* at 1230-31 (emphasis added). In so holding, the Seventh Circuit relied on the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978), which held that, even where a defendant makes a showing that the government lied to the magistrate judge, no hearing is required if other material in the warrant suffices to show probable cause. *See id.* at 171-72. The Seventh Circuit explained that submitting false information to the magistrate judge "subverts the Fourth Amendment's warrant requirement because deliberately falsified information could mislead a magistrate into finding probable cause and issuing a warrant where he might otherwise not do so." *Pace*, 898 F.2d at 1231. "Yet," the Seventh Circuit continued, "the Court is willing to let a warrant stand if absent the false information probable cause still exists, even though the magistrate himself might have thought the facts important in finding probable cause." *Id.* Based on the standard articulated in *Franks*, the Seventh Circuit inferred that "[t]here is even less reason to suppress evidence from a search pursuant to a warrant issued by a magistrate who properly found probable cause" even if that exact same warrant was previously denied. *Id.*

The Seventh Circuit further explained that the resubmission of a search warrant comports with Fourth Amendment values, rejecting the defendant's unsubstantiated concerns about magistrate judge shopping:

> This approach in no way lessens the Fourth Amendment's protections: if the second magistrate's decision to issue the warrant was incorrect, a reviewing court can

8

eventually suppress the evidence. [The defendant] contends that allowing the government to resubmit a rejected warrant application to a second magistrate will lead to "magistrate shopping," thus deprecating the magistrate's role and diminishing the warrant requirement to a mere rubber-stamping process. As a practical matter, the kind of "magistrate shopping" [the defendant] envisions probably does not create a great problem. The parties have been able to uncover only one reported opinion (and we have found no other) besides the district court's opinion in this case that has even addressed the issue of resubmitting a warrant application to a second magistrate. Moreover, the defendant can still assert that probable cause did not exist to issue the warrant (a challenge [the defendant] has made here), or that the applying officer knew that the second magistrate was not the "detached, neutral magistrate" the Fourth Amendment requires. *A blanket rule barring the government from resubmitting a warrant application to a second magistrate would do little, if anything, to protect Fourth Amendment values. Such a rule would, however, cause courts to suppress evidence found in searches pursuant to warrants issued on probable cause.*

*Id.* at 1231 (emphasis added) (citations omitted).[6] The Seventh Circuit ultimately upheld the district court's denial of the defendant's suppression motion.

Several district courts have adopted *Pace*'s reasoning. Those courts have found that the denial of an application for a search warrant does not preclude the government from presenting the

---

[6] The one reported opinion is *United States v. Davis*, 346 F. Supp. 435 (S.D. Ill.1972). In *Davis*, ATF agents presented a search warrant application for a residence to a magistrate judge, who refused to authorize the warrant on the affidavit presented. *Id.* at 438. The agents then presented an "identical" application and affidavit to a different magistrate judge, who then signed the proposed warrant. *Id.* at 442 (noting that the agents literally "inked out" the first judge's name and replaced it with the second judge's name, without making any other changes). The *Davis* court ruled that the first magistrate judge's denial of the search warrant application was "final and binding" and thus "equitably estopped" the second judge from issuing the search warrant "on the exact same showing." *Id.* The *Davis* court then held that, in any event, there was no probable cause to support the search warrant. *Id.* This is an important distinction. The *Davis* court did not hold that estoppel *on its own* would render an otherwise constitutional search unconstitutional. Rather, *Davis* simply stands for the proposition that a search conducted without probable cause violates the Fourth Amendment.

Moreover, *Davis* has been criticized for its reliance on principles of equitable estoppel that have no bearing on a magistrate's review of a search warrant. *See* 2 Wayne R. LaFave, Search and Seizure, § 4.2(e). And the Seventh Circuit's more recent decision in *Pace* casts doubt on the reasoning in *Davis*.

same or similar application to a second magistrate. *See United States v. McCoy*, 678 F. Supp. 2d 1336, 1351 (M.D. Ga. 2009) ("The Court finds that, because the Fourth Amendment and *Franks v. Delaware* allow for the re-application of a previously denied search warrant request, a Federal Magistrate Judge's denial of a search warrant application cannot be a final judgment on the merits"); *United States v. Prine*, No. 17-cr-20, 2018 WL 2710689, at *7 (W.D. Ky. June 5, 2018) (declining to apply doctrine of res judicata to invalidate submission of an earlier search warrant to a different magistrate judge after it had been denied); *United States v. McCray*, No 15-cr-212, 2017 WL 3141172, at *11 (N.D. Ga. July 25, 2017) (holding that law enforcement officers were not estopped from obtaining a search warrant in a different county after a judge denied the warrant); *United States v. Sotto*, No. 06-20322, 2006 WL 8433713, at *2 (S.D. Fla. Sept. 6, 2006) (rejecting "claim of judge-shopping" where "the agent first applied to one magistrate judge and subsequently presented a slightly modified affidavit to another magistrate judge"); *see also* 2 Wayne R. LaFave, Search and Seizure, § 4.2(e).

This Court should do the same here. The denial of a search warrant does not preclude the government from presenting a similar application to a second magistrate. Under the Fourth Amendment and Supreme Court precedent, a magistrate judge's ruling on a search warrant application has no bearing on any matter other than that application being presented at that time. *See Gates*, 462 U.S. at 238 ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."). This Court is not required to consider, much less defer to, Judge Spaeth's denial. As one court explained, "constitutional principles do not restrain law enforcement officials from seeking successive authorizations before different Magistrates . . . when one Magistrate may initially

10

decline to issue a search warrant for a myriad of reasons on or off the record, whatever that may be in such matters." *People v. Bilsky*, 734 N.E.2d 341, 344 (N.Y. 2000) (citing *Pace*, 898 F.2d at 1230). Nor do principles of equitable estoppel apply to a magistrate judge's review of a search warrant application. *See McCoy*, 678 F. Supp. 2d at 1348 (explaining that a decision on a search warrant application is neither fully litigated nor a final judgment). Indeed, if principles of estoppel were to apply, then Judge Meriweather's two findings that probable cause existed would control because they were entered prior to Judge Spaeth's denial.

One might articulate a concern that the government could transport a device from one district to another until it receives a favorable ruling on probable cause to search the device. For starters, in this case, that is not what occurred. In any event, even if that were true, the Seventh Circuit explained that legal concerns over "magistrate shopping" are misplaced. *Pace*, 898 F.2d at 1231. The defendant retains the ability to challenge a search warrant through a suppression motion, ensuring the protection of her Fourth Amendment rights.[7] And the "touchstone" of the Fourth Amendment's Warrant Clause "is the existence probable cause," which has been present in each of the government's applications. *See United States v. McCray*, 15-cr-212, 2017 WL 9472888, at *12 (N.D. Ga. June 15, 2017). In this case, the government previously sought and received two search warrants that covered the Target Device; the government sought a similar warrant in a different district (intending to start the search process earlier), which was denied without explanation; the government lawfully seized the Target Device incident to arrest and transported it to Washington, D.C. where it will remain; and now the government seeks a warrant to search the

---

[7] In *United States v. Leon*, 468 U.S. 897, 918 (1984), the Supreme Court stated that "one could argue that applying the exclusionary rule in cases where the police failed to demonstrate probable cause in the warrant application deters futures inadequate presentations or 'magistrate shopping' and thus promotes the ends of the Fourth Amendment." But the *Leon* Court addressed the failure to establish probable cause, which the government maintains is present here.

Target Device after disclosing the previous denial. *Cf. Warshak v. United States*, 532 F.3d 521, 528

(6th Cir. 2008) (en banc) ("reasonableness" of searches under the Fourth Amendment turns on "the

context of an actual, not a hypothetical, search and in the context of a developed factual record").

This is simply not the case of the government going from magistrate to magistrate in bad faith

because its search warrant lacks probable cause or is otherwise deficient.

Because the search warrant establishes probable cause, and the Fourth Amendment does

not prohibit successive applications after a denial, the Court should issue the requested search

warrant.

**II.     This Search Warrant Application Should Remain an Ex Parte Proceeding Under Seal.**

The Court also requested the position of the government on whether this search warrant

application should remain an ex parte proceeding considering that the defendant has now been

arrested and is represented by counsel. Disclosing the existence and scope of this application would

give the defendant the opportunity to delete digital evidence, which she has done before in the

context of January 6, 2021. The government therefore has a compelling interest in preserving the

confidentiality of this proceeding until the warrant is executed.

A search warrant application "involves no public or adversary proceeding." *United States

v. United States District Court*, 407 U.S. 297, 321 (1972). It has long been recognized that search

warrant proceedings are traditionally conducted ex parte because of the danger of tipping off the

suspect or disclosing the mechanics of an ongoing investigation. *See Baltimore Sun Co. v. Goetz*,

886 F.2d 60, 63 (4th Cir. 1989); *see also United States v. Wells Fargo Bank Account Number

7986104185*, 643 F. Supp. 2d 577, 583 (S.D.N.Y. 2009) ("Warrant application proceedings are

highly secret in nature and have historically been closed to the press and public."). The Supreme

Court has also explained that the "proceeding for issuing a search warrant is *necessarily* ex parte,

since the subject of the search cannot be tipped off to the application for the warrant." *Franks*, 438

U.S. at 169 (emphasis added); *see also In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir.1988) ("[H]istorically the process of issuing search warrants involves an ex parte application by the government and in camera consideration by the judge or magistrate. Moreover, the very objective of the search warrant process, the seizure of evidence of crime, would be frustrated if conducted openly."). Search warrant applications are generally "unsealed at later stages of criminal proceedings, such as upon the return of the execution of the warrant or in connection with post-indictment discovery." *Wells Fargo*, 643 F.Supp.2d at 581.

There is no reason to depart from this standard procedure here even though the defendant has been arrested and is now represented by counsel. Converting this application into an adversarial proceeding would disclose to the defendant the existence and scope of the search warrant. Once alerted to the search warrant, the defendant could delete or encrypt digital evidence relating to her criminal activity. This concern is not merely theoretical. The defendant acknowledged deleting social media posts in the immediate aftermath of January 6, 2021. *See* Ex. B ¶ 44. The search of the phone might also produce evidence against uncharged individuals who could be tipped off by the additional search. Although the Target Device is now in the possession of the government, the defendant could still delete or encrypt information that exists on the cloud and is not saved to the device itself. Such tampering would prejudice a criminal investigation, creating a compelling governmental interest in preserving the confidentiality of this proceeding until the warrant is executed. *See Times Mirror Co.*, 873 F.2d at 1214 (noting that courts have been "highly deferential to the government's determination that a given investigation requires secrecy and that warrant materials be kept under seal."). This investigation is still ongoing as the government has not yet filed an information or obtained an indictment.

13

By contrast, the defendant would not be prejudiced at this stage if the proceeding remained ex parte. Once the search warrant is unsealed and disclosed to the defendant—something undersigned counsel intends to do forthwith—the defendant retains the ability to challenge the validity of the search warrant through a suppression motion. Federal Rule of Criminal Procedure 41(g) also provides the defendant with the right move at any time for the return of the seized property and obtain an adversary hearing for the purpose of determining the legality of the seizure—a right which the defendant has not yet chosen to exercise in this case. But the defendant has no right "to prior notice and [a] hearing in connection with the issuance of search warrants." *Zurcher*, 436 U.S. at 567. To hold otherwise would transform what has traditionally been an ex parte proceeding constrained by judicial review into an adversarial contest that could effectively halt or change the course of the government's investigation. Neither the Constitution nor federal law requires such a result.

## CONCLUSION

For these reasons, the government respectfully requests that the Court issue the requested search warrant. The Court should also decline to convert this search warrant application into an adversarial proceeding.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC Bar No. 481052

By:    */s/ Jake E. Struebing*
JAKE E. STRUEBING
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, DC 20530
D.C. Bar No. 1673297

14

(202) 252-6931
Jake.Struebing@usdoj.gov