UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: ONE DIGITAL DEVICE CURRENTLY LOCATED AT 601 4TH STREET NW, WASHINGTON, DC UNDER RULE 41 | Case No. 24-sw-91 |

### ORDER

This matter is before the Court on an application by the United States for a warrant to search a cellphone of a January 6th defendant. *See* Proposed Warrant, ECF No. 3-5. The cellphone is currently in the custody of the Washington Field Office of the Federal Bureau of Investigation. *Id.* at 10.[1] The affidavit in support of the warrant application states that the government previously applied for a warrant to seize and search the same cellphone before Magistrate Judge Autumn Spaeth of the U.S. District Court for the Central District of California, but she denied both the warrant application and the government's motion to seal the application and supporting documents.[2] *Id.* at 13; *see* Mem. Decision Regarding Issuance of Search and Seizure Warrants and Appls. to Seal, No. 8:24-mj-125 (C.D. Cal. Mar. 27, 2024), ECF No. 3 (hereinafter Judge Spaeth Mem.). The target of the investigation, Isabella DeLuca, was subsequently arrested in California on an arrest warrant issued by this Court,[3] at which time the subject cellphone was seized without a warrant incident to her arrest. *See* ECF No. 3-5 at 13; *United States v. Robinson*, 414 U.S. 218,

---

[1] Citations herein to documents on the Court's electronic filing system (ECF) cite the page numbers assigned by that system rather than the original page numbers of the document, to the extent those numbers are different.

[2] Prior to submitting a warrant for the cellphone in California, the government states that another magistrate judge from this court issued a Rule 41 search warrant for DeLuca's person and property in her apartment in Washington, D.C., including any digital devices, which the government asserts would have covered DeLuca's cellphone had it been found in her apartment when it was searched pursuant to the warrant. *See* ECF No. 3-1 at 3; ECF No. 3-4.

[3] DeLuca faces misdemeanors, not felonies, for her alleged conduct at the Capitol on January 6, 2021. *See* Information as to Isabella DeLuca, *United States v. DeLuca,* No. 24-cr-169 (D.D.C. Apr. 5, 2024), ECF No. 18.

235 (1973) (holding that the warrantless search of a person—and seizure of items found thereupon—incident to their lawful arrest is reasonable under the Fourth Amendment and need not be limited to a search for weapons and evidence of the crime of arrest). Rather than seeking reconsideration or appealing Judge Spaeth's denial of the warrant to search the cellphone in the Central District of California, the government—taking advantage of Rule 41's apparently fluid venue provisions that allow application for a warrant in any district where the property to be searched is found—physically transported the cellphone to this District and submitted another warrant application to the undersigned to search the cellphone. *See* Fed. R. Crim. P. 41(b)(1) (providing venue for a magistrate judge "to issue a warrant to search for and seize . . . property located within the district"). The government describes that application as "similar" to the one denied by Judge Spaeth. Gov't's Mem., ECF No. 3-1 at 4.

The Court is concerned with the propriety of the government's submission of a successive warrant application to a magistrate judge seeking authorization to conduct a search previously denied by a different magistrate judge in another jurisdiction—an example, seemingly, of what is commonly referred to as "judge shopping." Whether in these circumstances the undersigned can or should grant such a successive search warrant application, notwithstanding any independent finding it may make of probable cause, does not appear to have been addressed by any binding authority in this Circuit. The few cases that have considered the issue outside of this Circuit have reached different conclusions. In *United States v. Davis,* 346 F. Supp. 435, 442 (S.D. Ill. 1972), the district court found "highly improper" the government's presentation to a second magistrate judge of a successive warrant affidavit that had previously been denied by a different magistrate judge. There, the government "merely inked out" the magistrate judge's name who first denied the warrant and inserted the name of another magistrate judge, who then granted it. *Id.* Finding

2

the denial by the first magistrate judge a "judicial decision," the district court held that it "equitably estopped [the second magistrate judge] from issuing a search warrant on the exact same showing." *Id.*; *see also In re [REDACTED]@gmail.com*, 62 F. Supp. 3d 1100, 1105 & n.12 (N.D. Cal. 2014). In *United States v. Pace,* 898 F.2d 1218, 1230 (7th Cir. 1990), on the other hand, the Seventh Circuit found that the "Fourth Amendment on its face does not prohibit the government from seeking a second magistrate's [sic][4] approval to search when another magistrate [judge] denies a search warrant."[5]  According to the *Pace* court, the "important question[]" is "not how many magistrate[] [judges] the government applied to before finally obtaining a warrant," but "whether the magistrate [judge] really was 'neutral and detached,' and whether probable cause actually existed."  *Id.* at 1230–31.  In reaching that decision, the Seventh Circuit dismissed as no "great problem" the defendant's concerns about "magistrate [judge] shopping" because, "[a]s a practical matter," the parties were "able to uncover only one reported opinion . . . besides the district court's opinion in [*Pace*] that has even addressed the issue of resubmitting a warrant application to a second magistrate [judge]."  *Id.* at 1231.

Case law concerning magistrate judge shopping has not grown appreciably since *Pace*, suggesting that few United States Attorneys have sought to do what the United States Attorney for the District of Columbia attempts here.  Given the paucity of the cases, clarity on that legal issue

---

[4] The title *magistrate* no longer exists in the U.S. Courts, having been changed from "magistrate" to "magistrate judge" by act of Congress in 1990.  Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, § 321 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge.").

[5] The government in *Pace* sought the successive search warrant before the chief magistrate judge of the same court that had denied the initial warrant and only after the magistrate judge that had denied the warrant said he did not object to another judge reviewing the affidavit.  *Id.* at 1225.  The government has not followed that procedure here; rather, it appears to seek to avoid whatever reconsideration or appeal of Judge Spaeth's warrant denial that may exist in the Central District of California.  Nor has the government indicated in its filings whether it has made Judge Spaeth aware of its efforts to have a judge of coordinate rank in this district effectively vacate her denial of the warrant to search the cellphone.

in this jurisdiction is necessary prior to adjudicating the government's warrant application. Doing so is particularly important in the January 6th cases because most of the defendants are located outside of this district and, as a result, the government not infrequently seeks search warrants from magistrate judges in the defendants' home districts related to the collection of evidence located there. Before this Court treats "as a practical matter" the warrant decisions of the magistrate judges in those districts as trivial and fungible, and before it permits the government to ignore the procedures for reconsideration or appeal of warrant decisions by magistrate judges in those other districts, the issues concerning the propriety of the government's application, and this Court's authority to grant it, should be aired and vetted in public, adversarial proceedings. *In re Press Application for Access to Judicial Records in Case No. 23-SC-31*, --- F. Supp. 3d. ---, ---, 2023 WL 8254630, at *3 (D.D.C. Nov. 29, 2023) (noting, in the context of a request to unseal search warrant materials, "a strong presumption in favor of public access to judicial proceedings" (quoting *Hardaway v. D.C. Hous. Auth.* 843 F.3d 973, 980 (D.C. Cir. 2016)).

The government disagrees with that conclusion, arguing that these warrant proceedings should remain *ex parte* and under seal, per tradition, "because of the danger of tipping off the suspect or disclosing the mechanics of an ongoing investigation." *See* Gov't's Mem., ECF No. 3-1 at 12. While "historically the process of issuing search warrants involves an ex parte application by the government and *in camera* consideration" by the magistrate judge because "the seizure of evidence of crime, would be frustrated if conducted openly," *In re Search Warrant for Secretarial Area Outside Office of Gunn,* 855 F.2d 569, 573 (8th Cir. 1988),[6] there are compelling

---

[6] Search warrant applications are generally "unsealed at later stages of criminal proceedings, such as upon the return of the execution of the warrant or in connection with post-indictment discovery." *United States v. Wells Fargo Bank Account Number 7986104185,* 643 F. Supp. 2d 577, 581 (S.D.N.Y. 2009).

reasons to deviate from that norm here.[7]  As stated, the Court would benefit from the development of the record that the adversarial process brings and the sharpening of the novel legal issues raised.  More, the Court is unpersuaded that there remains any compelling governmental interest in continuing to preserve the confidentiality of this particular warrant proceeding.  DeLuca has been arrested, her arrest has been made public,[8] and she knows her cellphone has been seized.  Further, the cellphone is in the FBI's possession, greatly reducing any concerns about the destruction of evidence on it.[9]  In any event, DeLuca is at this point aware of the government's investigation and either is or soon will be aware of its efforts to search her cellphone, both through discovery in the underlying prosecution and specifically through the production of the search warrant affidavit and its denial in the Central District of California, which Judge Spaeth ordered unsealed on March 27, 2024.  *See* Judge Spaeth Mem.  The government argues that the unsealing of Judge Spaeth's denial itself provides a basis to keep these successive warrant proceedings secret because the denial "may suggest to the defendant that she is in the clear and that her digital data is no longer subject to search."  Gov't's Suppl. Mem., ECF No. 2 at 9.  Where the appropriateness of the government's successive warrant application is in question, the Court refuses the government's invitation to participate in that pretense.

---

[7] While the government cites a few cases to support the proposition that the target of an investigation has no *right* to participate in search warrant proceedings, and that warrant application proceedings are *generally* conducted *ex parte*, it does not argue or cite authority for the proposition that the Court cannot in its discretion seek opposing views through the adversarial process to address novel legal issues of first impression prior to issuing a search and seizure warrant—as this Court has sometimes done where appropriate in other warrant matters in the past.

[8] *See* Michael Kunzelman, *Social Media Influencer Is Charged with Joining the Jan. 6 Attack on the US Capitol*, Associated Press, Mar. 18, 2024, https://apnews.com/article/isabella-deluca-influencer-arrested-capitol-riot-81c81ad10e4e407ec4827376133849a8 [https://perma.cc/R9LZ-9BA9].

[9] The FBI presumably maintains such evidence in a state where it cannot be remotely tampered with.  As for other evidence in the "cloud," about which the government has vaguely expressed concern, if DeLuca were going to tamper with or destroy such evidence, she would likely have already done so, as she has been aware of the government's investigation since, at the latest, her arrest on March 15.

Therefore, by separate order, the Court will direct the Clerk's Office to unseal this warrant matter and certain of its filings that are relevant to the issue the Court wants briefed. *See* ECF No. 4. To be clear, that issue is the propriety of the government's submission of a successive warrant application seeking authorization to conduct a search previously denied by a magistrate judge in another jurisdiction, and whether this Court may consider that application notwithstanding any finding it may make with respect to probable cause. Assuming the Court can and should consider the government's application, it needs no assistance determining whether the application is supported by probable cause. Therefore, briefs should not address that issue.[10]

Accordingly, it is

**ORDERED** that the government provide to DeLuca's counsel a copy of this Order and the unredacted version of the government's search warrant application, proposed order, memorandum in support of its application, and attachments thereto—that is, the entirety of ECF No. 1—on or before April 15, 2024. The unredacted version of ECF No. 1 should be treated by DeLuca and her counsel as subject to the protective order in the underlying criminal case, *United States v. DeLuca*, 24-cr-169, ECF No. 16. It is further

**ORDERED** that DeLuca file a response to the government's memorandum, ECF No. 3-1, on or before April 29, 2024. It is further

**ORDERED** that any reply shall be filed by the government on or before May 9, 2024.

---

[10] The unredacted warrant application and attachments, ECF No. 1, will remain under seal because they contain personally identifying information of certain individuals involved in the investigation. In order to protect those individuals' privacy, only the redacted versions of those documents, ECF No. 3 and attachments, will be unsealed. The government's supplemental memorandum, ECF No. 2, will remain under seal because it is irrelevant to the issue the Court is ordering briefed.

**SO ORDERED.**

Date: April 12, 2024

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE