UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: ONE DIGITAL DEVICE CURRENTLY LOCATED AT 601 4TH STREET NW, WASHINGTON, DC UNDER RULE 41 | SW No. 24-sw-091 |

**UNITED STATES' REPLY IN SUPPORT OF AN APPLICATION
UNDER RULE 41 FOR A WARRANT TO SEARCH**

The United States respectfully submits this reply in support of the above-captioned search warrant. The Court has authority to issue the search warrant. Courts have consistently held that the Fourth Amendment "does not prohibit the government from seeking a second magistrate's approval to search when another magistrate denies a search warrant." *United States v. Pace*, 898 F.2d 1218, 1230 (7th Cir. 1990); *see* ECF No. 3-1 at 10 (citing cases). A magistrate judge's ruling on a search warrant has no bearing on any matter other than that application being presented at that time. And for good reason. A bright-line estoppel test to prohibit successive warrant applications, even where new information is presented, would suppress evidence and undermine criminal investigations. *See Pace*, 898 F.2d at 1231. Courts have correctly rejected such an approach as "not rational or legally reasonable." *United States v. McCray*, No. 15-cr-212, 2017 WL 3141172, at *11 (N.D. Ga. July 25, 2017).

For starters, the Defendant does not address the fact that this search warrant application, although similar, is <u>not</u> identical to the one denied in the Central District of California. This application includes new facts that strengthen the government's showing of probable cause. First, based on financial records, the Defendant pays for Apple iCloud storage, which would allow her to transfer data seamlessly from one Apple device to another, including the target device. Second, the application explains that the FBI recovered two Apple iPhones at the defendant's apartment in

1

Washington, D.C.—one of which is likely the phone the Defendant possessed on January 6, 2021—further suggesting the routine capability to transfer data across Apple devices, including the target device. These facts were not presented in the application before Judge Spaeth in the Central District of California, who articulated concerns about the transferability of data across devices. *See* ECF No. 2-1 at 16. Those concerns were squarely addressed by the additional evidence presented to this Court. Third, since submitting this application, the government has confirmed through legal process that the Defendant has possessed an iCloud account since May 2018, to which she has registered several devices including an Apple iPhone 14 Plus, matching the target device.[1] This additional information, which the government has learned as the investigation has evolved, strengthens probable cause and demonstrates why successive applications should not be estopped. The government may develop an investigation further for the purposes of warrant submissions.

The Defendant nonetheless argues that a successive search warrant application "violate[s] the first principle of res judicata" and that "a cause of action may not be relitigated once it has been judged on the merits." ECF No. 6 at 1. But this is a search warrant application, not a cause of action. The Defendant has failed to provide any authority for its proposition that the denial of a warrant constitutes a final judgment precluding this Court from issuing a similar warrant.

The Supreme Court has stated that res judicata "applies to criminal as well as civil proceedings . . . and operates to conclude those matters in issue which *the verdict* determined though the offenses be different." *Sealfon v. United States*, 332 U.S. 575, 578 (1948) (emphasis added). There has been no verdict in this case. Judge Spaeth's denial is not, as the Defendant

---

[1] The government will resubmit the search warrant with this additional fact about if the Court finds it material to its analysis. The government does not believe, however, that this fact meaningfully changes the probable cause already proffered.

2

argues, a final judgment on the merits. It is merely a denial of "a search warrant application where evidence was being sought to support a potential allegation of a criminal violation." *United States v. McCoy*, 678 F. Supp. 2d 1336, 1349 (M.D. Ga. 2009). Indeed, "a finding that probable cause is lacking states nothing more than that the Government has not yet met the threshold. Nothing prevents the Government from gathering more evidence and making more attempts until the threshold is achieved, similar to the Supreme Court permitting the Government to submit its evidence to later grand juries following a grand jury's return of no true bill." *Id.* at 1351. Thus, a finding of no probable cause (or even a finding of probable cause) is not final or permanent. *See United States v. Savides*, 658 F. Supp. 1399, 1404 (N.D. Ill. 1987) ("A probable cause determination on an application for a search warrant by a magistrate is not a final order.").

Principles of collateral and equitable estoppel are equally inapplicable here. Collateral estoppel (or issue preclusion) in the criminal context "is a narrow exception to the Government's right to prosecute a defendant in separate trials for related conduct." *United States v. Quintero*, 165 F.3d 831, 835 (11th Cir. 1999). The D.C. Circuit has explained that collateral estoppel applies if "an issue essential to the prosecution's case in the second trial has necessarily been decided for the defendant in the first trial." *United States v. Bowman*, 609 F.2d 12, 17 (D.C. Cir. 1979). Collateral estoppel does not apply here because the Defendant is not facing a second trial in which the elements of a previous acquittal are essential. Separately, the party seeking to invoke equitable estoppel "must have been an adverse party in the prior proceeding, must have acted in reliance upon his opponent's prior position, and must now face injury if a court were to permit his opponent to change positions." *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980). The Defendant

was not an adverse party in the Central District of California search warrant application, nor can she demonstrate any injury or prejudice.[2]

To the contrary, the only prejudice from an estoppel perspective in this case would be to the government. Defendants will argue that Judge Spaeth's denial precludes, as a matter of law, the government from seeking evidence related to January 6 because such evidence is now stale and cannot support a showing of probable cause. But Judge Spaeth's opinion appears to be an anomaly as one of the only courts in the nation to write that evidence from January 6, 2021 is "impermissibly stale and tenuous," ECF No. 2-1 at 14, a finding which contradicts hundreds, if not thousands, of search warrants approved by this Court and other courts across the country in connection with the January 6 investigation over the course of the last three years. The opinion concludes that the government's evidence is stale without accounting for the very evidence addressing staleness—a detailed discussion of recent searches that continued to yield evidence of the conduct on January 6, 2021. The opinion did not even address the legal principles underlying the staleness doctrine, including how the passage of time does not necessarily render digital evidence stale. And the opinion faults the government for offering only "generalized" and "conclusory" statements in support of probable cause, but then fails to discuss specific facts that bear directly on probable cause.[3]

In support of her claim of estoppel, the Defendant cites only one case from over fifty years ago—*United States v. Davis*, 346 F. Supp. 435 (S.D. Ill. 1972)—which the government flagged in

---

[2] Even if principles of estoppel were to apply, Judge Meriweather's determination that probable cause existed to search the target device would arguably control because it was entered prior to Judge Spaeth's denial.

[3] Because this search warrant application and Judge Spaeth's opinion are now public, the government respectfully submits that there is no longer a compelling reason to keep its supplemental brief under seal. *See* ECF No. 2.

4

its opening brief. *See* ECF No. 3-1 n.6. *Davis* involved an investigation into a licensed gun dealer for the illegal sale of firearms. On July 24, 1971, ATF agents executed a search warrant at the defendant's residence seizing numerous firearms in addition to books, records, and other documents pertaining to firearm transactions. Two days later, on July 26, 1971, the government presented a second search warrant for the defendant's residence to Magistrate Judge Ghiglieri, who refused to authorize another search of the defendant's residence. This second warrant was based on the fact that, during execution of the first search warrant, the ATF discovered approximately 500 additional firearms. *Id.* at 442. One day later, the government submitted a third, "identical" application to Magistrate Judge Giffen in the same district, who issued the warrant and the ATF recovered ninety additional firearms. *Id.* Notably, "Magistrate Giffin was apprised of the fact that this same affidavit was presented to Magistrate Ghiglieri and that he had denied it." *Id.*

In granting a suppression motion, the district court held that the first search warrant supported probable cause to seize the defendant's books and records, along with four rifles and five revolvers. *Id.* at 440. But the court found that the ATF could not "seize all of the Defendant's gun stock" because the defendant had "the legal right to sell firearms" and the affidavit proffered only "a very small number of allegedly illegal sales." *Id.* The court ultimately suppressed all evidence under the first search warrant because the ATF failed to provide notice of authority and purpose when breaking open a door. Against this backdrop, the court concluded that the third warrant was "highly improper." *Id.* at 442. The court held that Magistrate Judge Ghiglieri's denial of the second warrant was "final and binding" and the denial "equitably estopped Magistrate Giffin from issuing a search warrant on the exact same showing." *Id.* The court further explained that the second and third warrants, which merely "reiterated the other sales mentioned in the affidavits for the first search warrant," lacked probable cause to seize hundreds of other, unrelated firearms. *Id.*

5

The Defendant's reliance on *Davis* is misplaced for several reasons. First, the *Davis* court held that the successive third warrant was deficient under the Fourth Amendment because the government lacked probable cause to seize the entirety of the defendant's gun collection in the first instance. The *Davis* court did not, however, hold estoppel on its own would render an otherwise constitutional search unconstitutional, as would be the case here if the Court gives preclusive effect to Judge Spaeth's decision. Rather, *Davis* stands for the unequivocal proposition that a search conducted without probable cause violates the Fourth Amendment.

Second, the facts in *Davis* are distinguishable. In *Davis*, the government executed the first warrant at the residence, discovering hundreds of firearms beyond the scope of its investigation. The government sought a second warrant to search the residence again, which was denied likely because it relied on the same "very small number of allegedly illegal sales" as the first warrant. *Davis*, 346 F. Supp. at 440. The government then sought a third warrant, which was "identical" to and based on "the exact same showing" as the second warrant. *Id.* at 442. That is far removed from the facts here. Although the warrants in the Central District of California and the District of Columbia are similar, they are not identical for the reasons discussed above. Moreover, in *Davis*, the government lacked probable cause to search the residence for a second time to recover firearms that had no relation to the allegedly illegal sales. Here, by contrast, the government is seeking to search the target device for the first time and has probable cause to search for evidence of crimes relating to the riot at the U.S. Capitol on January 6, 2021, as evidenced by Judge Meriweather issuing two search warrants covering the target device.

Third, *Davis* has appropriately been criticized for its reliance on principles of equitable estoppel that have no bearing on a magistrate judge's review of a search warrant. *See* 2 Wayne R. LaFave, Search and Seizure, § 4.2(e). The cases cited by the *Davis* court involve "collateral

6

estoppel arising out of prior administrative proceedings, which seems in inapplicable to the situation in which a magistrate declines to issue a warrant" for the reasons described above. *Id.* And to the extent *Davis* held that a successive search warrant should be equitably estopped, that holding has been overruled by the Seventh Circuit's more recent decision in *Pace*.

To be sure, the case law has not grown appreciably since the Seventh Circuit's decision in *Pace*. But, since then, district courts have unanimously followed *Pace*'s reasoning. *See, e.g.*, *McCoy*, 678 F. Supp. 2d at 1351; *United States v. Prine*, No. 17-cr-20, 2018 WL 2710689, at *7 (W.D. Ky. June 5, 2018); *McCray*, 2017 WL 3141172, at *11; *United States v. Sotto*, No. 06-20322, 2006 WL 8433713, at *2 (S.D. Fla. Sept. 6, 2006). The Defendant has presented no reason to depart from this consensus.

In its order, here, the Court cited to *In re [REDACTED]@gmail.com*, 62 F. Supp. 3d 1100 (N.D. Cal. 2014). *See* ECF No. 5 at 3. In that case, the government sought a "general" warrant for electronic data in the Northern District of California after a previous application for a similar warrant had been denied in the District of Columbia. The court denied the warrant as overbroad because, among other things, there was "no date restriction of any kind" and the government made no "commitment to return or destroy evidence that is not relevant to its investigation." *Id.* at 1104. These overbreadth concerns are not present here and the court's concerns about "duplicating court efforts" were dicta. *Id.* at 1105. In any event, the court made clear that "nothing in Rule 41 specifically prohibits this type of follow-up request in a second district after denial of an application in the first." *Id.* And the court credited the government for disclosing "its previous unsuccessful effort," as was the exact case here. *Id.*

The Defendant also expresses concerns about "magistrate shopping." ECF No. 6 at 1. As the government explained in its opening brief (ECF No. 3-1 at 11-12), that simply did not happen.

The government previously sought and received two search warrants, supported by probable cause, that would have allowed the government to search the target device in the District of Columbia. Upon learning that the Defendant was in California, the government sought a similar warrant in a different district, intending to start the search process earlier, which was denied without explanation on the evening of March 14, 2024. The next morning, without considerable time to evaluate its appellate avenues,[4] the FBI arrested the Defendant and seized the target device incident to arrest. The government then transported the device to Washington, D.C.—where the investigation was and is based, where the Defendant resides, where the Court previously issued two search warrants covering the device, and where the device will remain.

Almost two weeks later, on March 27, 2024, Judge Spaeth issued her memorandum decision. For nearly two weeks, the government had no order to appeal and no idea why its application was deficient. By the time the court issued its decision, the target device was in the custody of the FBI in Washington, D.C. and the government had already filed the instant application *disclosing* the previous denial. This is simply not the case of the government going from magistrate judge to magistrate judge in bad faith because its search warrant lacks probable cause or is otherwise deficient. Nor is it the case where the government sought a more favorable judge without explanation. Instead, the government properly disclosed the denial by Judge Spaeth, sought legal process in a district entirely familiar with the January 6 prosecutions, and did so before having any written order in hand, while simultaneously strengthening its probable cause further.

---

[4] There is no requirement for the government to appeal the denial of a search warrant or pursue the extraordinary remedy of mandamus. The only relevant determination for Fourth Amendment purposes is whether the application before the Court supports probable cause to search the target device. *See Pace*, 898 F.2d at 1230-31. If so, the court "*must* issue the warrant." Fed. R. Crim. P. 41(d)(1) (emphasis added).

In any event, as the Seventh Circuit explained, legal concerns over "magistrate shopping" are misplaced. *Pace*, 898 F.2d at 1231. Disclosing the prior denial, which the government did in this application, including providing copies of the denied warrant to the Court, "lessens the potential for inappropriate 'Judge shopping' and alerts the different Magistrate fully to earlier developments, or nondevelopments, so that appropriate inquiry and consideration may be given for a fully informed judgment and decision on the matter at hand." *People v. Bilsky*, 734 N.E.2d 341, 344 (N.Y. 2000); *see also United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1175 (9th Cir. 2010) (en banc) ("[W]e emphasize that, while the government is free to pursue warrants, subpoenas and other investigatory tools, and may do so in whichever judicial district is appropriate in light of the location of the information sought, it must fully disclose to each judicial officer prior efforts in other judicial fora to obtain the same or related information, and what those efforts have achieved."). It simply has not been the case, as the Defendant contends, that allowing the government to submit successive applications will lead "to an enormous increase" in "magistrate shopping." ECF No. 6 at 1. To the contrary, a bright-line rule estopping the government from seeking successive search warrants would suppress evidence supported by probable cause and undermine ongoing and evolving criminal investigations. *See Pace*, 898 F.2d at 1231.

Even in the case of blatant "magistrate shopping," the defendant retains meaningful remedies, including a motion to suppress, a Rule 41(g) motion, and potentially even a damages action.[5] Here, however, no such shopping occurred. Instead, the government has a good-faith

---

[5] To provide the Court with an example where "magistrate shopping" falls on the wrong side of the exclusionary rule, the Court should look to *United States v. Czuprynski*, 8 F.3d 1113 (6th Cir. 1993). There, the prosecutor presented the search warrant application to two judges who *both* refused to sign the warrant. *Id.* at 1115. The prosecutor then told a police officer to seek a warrant from a particular judge. *Id.* The officer first re-submitted the warrant to one of the district judges who previously declined to issue the warrant and he refused again. *Id.* The officer then took the warrant to the judge whom he knew had a "past conflict" with the defendant and who issued the

basis to continue its investigation, has strengthened its evidentiary bases to search the target device, and disclosed the original denial to the Court. Given those developments, both factually and legally, employing principles of estoppel would be improper. Thus, consistent with Judge Meriweather's prior approvals, we seek this Court's approval for issuance of the warrant.

## CONCLUSION

For these reasons, and the reasons stated in its opening brief (ECF No. 3-1), the government respectfully requests that the Court issue the requested search warrant.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC Bar No. 481052

By:   */s/ Jake E. Struebing*
JAKE E. STRUEBING
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, DC 20530
D.C. Bar No. 1673297
(202) 252-6931
Jake.Struebing@usdoj.gov

---

warrant. *Id.* at 1118. *Even* then, the Sixth Circuit sitting en banc held that the good-faith exception to the exclusionary rule applied. *See United States v. Czuprynski*, 46 F.3d 560 (6th Cir. 1995) (en banc).

## CERTIFICATE OF SERVICE

I certify that, on May 9, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification to all counsel of record.

          By:     */s/ Jake E. Struebing*
                   JAKE E. STRUEBING
                   Assistant United States Attorney
                   601 D Street, N.W.
                   Washington, DC 20530
                   D.C. Bar No. 1673297
                   (202) 252-6931
                   Jake.Struebing@usdoj.gov