UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE DIGITAL DEVICE CURRENTLY LOCATED AT 601 4TH STREET NW, WASHINGTON, DC UNDER RULE 41 | No. 24-sw-91 (GMH) |

## MEMORANDUM OPINION AND ORDER

Generally, when a federal judicial officer rules on an application that disposes of a case, the applicant has two options: it can seek reconsideration of the decision or it can seek review of the decision through the normal, hierarchical appellate process.[1] Going to another court to seek a more favorable outcome from a judge of coordinate jurisdiction is not one of the options. Yet that is what the United States Attorney for the District of Columbia has done here.

The facts are laid out in prior filings. *See, e.g.*, ECF Nos. 3-1, 5. In short, acting on information that Isabella Maria DeLuca—a Washington, D.C. resident and January 6 defendant who had not yet been arrested—would be in the Central District of California in mid-March 2024, the government applied to the U.S. District Court there for a warrant to search her cell phone, which it expected to recover upon her arrest. *See* ECF No. 3-1 at 3. Magistrate Judge Autumn Spaeth denied the application and, later, issued a 21-page opinion explaining that the government had not established probable cause to believe that the target device—which was the third phone the defendant had owned since the events of January 6, 2021—would have "evidence of the charged misdemeanors that occurred in 2021." Memorandum Decision at 16, *In re Search*

---

[1] The Federal Rules of Civil Procedure expressly provide for motions for reconsideration. *See* Fed. R. Civ. P. 59(e) (governing motions to alter or amend a judgment); Fed. R. Civ. P. 60 (governing motions for relief from a judgment or order). The Federal Rules of Criminal Procedure do not, but courts have determined that reconsideration is available in criminal cases, importing standards from the civil context. *See, e.g.*, *United States v. Gamble*, No. 19-cr-348, 2020 WL 5062938, at *3 (D.D.C. Aug. 27, 2020); *United States v. Dorsey*, No. 14-cr-328, 2016 WL 3607155, at *1 (C.D. Cal. June 30, 2016).

*Warrant for the Property Located at [Redacted]*, No. 8:24-mj-125, (C.D. Cal. Mar. 27, 2024); *see also* ECF No. 3-1 at 4. Thereafter, DeLuca was arrested in California on a warrant issued in this District and the target cell phone was seized incident to that arrest. *See* ECF No. 5 at 1. "Rather than seeking reconsideration or appealing Magistrate Judge Spaeth's denial of the warrant to search the cellphone in the Central District of California, the government . . . physically transported the cellphone to this District" and submitted to the undersigned a substantially similar warrant application to search the phone.[2] *Id.* at 2.

Although judge-shopping can take different forms, it is at its most basic a litigant's attempt to manipulate the judicial system to find a judge likely to rule in its favor. *See, e.g.*, *In re Mann*, 229 F.3d 657, 658 (7th Cir. 2000) (describing as judge-shopping the situation in which a litigant seeks recusal of a judge who has issued adverse rulings in the hope of drawing a judge "who might be more sympathetic to [its] cause"); *Nat'l Treasury Emps. Union v. IRS*, 765 F.2d 1174, 1177 n.5 (D.C. Cir. 1985) ("The semblance of judge shopping in the court of first instance is also a concern when a litigant discontinues a fray, only to start over again on another day."). As such, it "clearly constitutes 'conduct which abuses the judicial process,'" *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)), and is "universally condemned." *Lane v. City of Emeryville*, 56 F.3d 71, 1995 WL 298614, at *2 (9th Cir. 1995) (quoting *United States v. Conforte*, 457 F. Supp. 641, 652 (D. Nev. 1978), *aff'd*, 624 F.2d 869 (9th Cir. 1980)); *see also, e.g.*, *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1443 (9th Cir. 1995) ("Judge-shopping doubtless disrupts the proper functioning of the judicial

---

[2] The government insists that the warrant application before this Court is "similar," but "*not* identical" to the one before Judge Spaeth, highlighting some additional facts that it has learned since its submission in California. ECF No. 7 at 1–2. The government does not address why the charge of judge-shopping should apply only when an identical application is presented to multiple judges and, oddly, it suggests that none of the new facts are actually material to the probable cause finding. *See* ECF No. 2 at 1-4; ECF No. 7 at 2 n.1. In any case, the application here is still substantially similar to the prior application and, as discussed below, the government could and should have presented any new facts purportedly strengthening its showing of probable cause to Judge Spaeth.

2

system . . . ."); *Hughes v. Berryhill*, No. 16-cv-352, 2017 WL 3000035, at *1 (E.D. Ky. Feb. 21, 2017) ("Courts have . . . always been worried about . . . judge-shopping.").

It is difficult to see how the government's conduct here can be interpreted as anything other than judge-shopping. Magistrate Judge Spaeth denied the government's warrant application to search DeLuca's phone on March 14, 2024. *See* ECF No. 3-1 at 4. The phone was recovered incident to her arrest on March 15, 2024. *See id.* Thereafter, the government "transported" the phone to this District and less than one week later submitted a substantially similar warrant application to the undersigned. *Id.*; *see also* Email sent on behalf of Jake Struebing, Assistant U.S. Att'y, to D.D.C. Criminal Warrants Inbox (Mar. 20, 2024 12:42 PM ET) (on file with the chambers of the undersigned). That is, the government had a decision from a judicial officer denying its application to search DeLuca's phone. As in this District, it could seek reconsideration from the judge who made that decision—Judge Spaeth—or ask for review of the decision by a district judge in the Central District of California.[3] It nevertheless eschewed established procedures for reconsideration or appeal of Magistrate Judge Spaeth's ruling and sought to circumvent her denial of its search warrant application by submitting an application to search the same phone to the undersigned magistrate judge in Washington, D.C. That the government viewed the new application as effectively an appeal of Magistrate Judge Spaeth's denial is clear from the supplemental briefs it filed, which argue that she ignored facts supporting probable cause, that her

---

[3] Section 636(b)(1)(A) of Title 28 of the United States Code provides for review of a magistrate judge's decision on a pretrial matter. And other courts have recognized that orders issued by magistrate judges in connection with search warrant applications are subject to review. *See In re Search of a White Google Pixel 3 Xl Cellphone in a Black Incipio Case*, 398 F. Supp. 3d 785, 788 (D. Idaho 2019). In this District, the right to appeal a denial of a search warrant is embodied in Local Civil Rule 40.7(e) and Local Criminal Rule 57.14(e), which provide that the Chief Judge shall "hear and determine requests for review of rulings by magistrate judges in criminal matters not already assigned to a district judge." This Court has been informed that, although the Central District of California does not have a corresponding rule, a request for review of a magistrate judge's denial of a search warrant application would go to the district judge on criminal duty. *See* Email to the chambers of the undersigned (May 9, 2024 3:37 PM ET) (on file with the chambers of the undersigned).

3

concerns about the staleness of the government's evidence were "[m]isguided," and that her legal analysis was wrong. ECF No. 2 at 1–7; *see also* ECF No. 7 at 4. "Th[is] court cannot be made a party to what is in effect an appeal from Judge [Spaeth's] ruling" on the warrant application before her.[4] *Oxbow Energy, Inc. v. Koch Indus., Inc.*, 686 F. Supp. 278, 282 (D. Kan. 1988); *see also Hands v. U.S. Dist. Ct. for S. Dist. of Ala.*, No. 05-cv-0311, 2005 WL 8158728, at *3 (S.D. Ala. June 3, 2005) ("[A]n oft-cited principle of law dictates that judges of coordinate jurisdiction ought not overrule each other's decisions."); *In re Persico*, 362 F. Supp. 713, 714 (E.D.N.Y. 1973) ("Judges of coordinate jurisdiction do not, except in the most extraordinary situations, have the function of reviewing each other's orders.").

The government maintains that the only thing that matters here is whether the search warrant application presented to the undersigned meets the probable cause and particularity requirements of the Fourth Amendment. *See* ECF No. 3-1 at 4–5. If it does, the government insists that the Court "*must* issue the warrant." *Id.* at 5 (emphasis in original) (quoting Fed. R. Crim. P. 41(d)(1)); ECF No. 7 at 8 n.4. But the government sought a warrant to search the target phone from Magistrate Judge Spaeth on substantially similar facts and she found the showing of probable cause was lacking. *See generally* Memorandum Decision, *In re Search Warrant for the Property Located at [Redacted]*, No. 8:24-mj-125, (C.D. Cal. Mar. 27, 2024). Issuing the warrant under those circumstances would be a *violation* of Rule 41(d)(1). Again, the government at that point could have sought reconsideration or review of Magistrate Judge Spaeth's ruling in California. The undersigned does not find anything in Rule 41 to suggest that the proper procedure is to ask a

---

[4] To the extent the government contends that it is not judge-shopping because two similar search warrants were previously approved by a different magistrate judge on this court, *see* ECF No. 3-1 at 11; ECF No. 7 at 4 n.2, the argument is not well-taken. Putting aside the oddity of an argument that presenting a substantially similar search warrant application to *three* judges is somehow less improper than presenting it to only two, the contention misses the point. The government chose to apply for a search warrant for DeLuca's phone from Magistrate Judge Spaeth. She denied it. The proper procedure was then to seek reconsideration from her or seek review of her decision.

different magistrate judge in a different jurisdiction for a better result. It would surprise the undersigned if the intent of Rule 41(b)'s fluid venue provisions for search warrants of movable property was to provide the government with license to do what it did here, that is, brush aside the denial of a warrant application to try again with a different magistrate judge located in what the government perceives as a more favorable district. Indeed, the Supreme Court has "expressed a concern for 'magistrate [judge] shopping' in the context of search warrant applications." *United States v. Watkins*, No. 14-20034, 2015 WL 753344, at *13 (E.D. Mich. Feb. 22, 2015) (quoting *United States v. Leon*, 468 U.S. 897, 918 (1984)); *see also In re @gmail.com*, 62 F. Supp. 3d 1100, 1105 (N.D. Cal. 2014) (noting, in connection with a search warrant application that had been successively presented to two different magistrate judges in two different districts, that "there is a long-recognized presumption against duplicating court efforts—what some charitably call judge-shopping.").

In arguing that "[t]he denial of a search warrant does not preclude the government from presenting a similar application to a second magistrate [judge]," the government relies primarily on the Seventh Circuit's opinion in *United States v. Pace*, 898 F.2d 1218 (7th Cir. 1990), which addressed the denial of a motion to suppress evidence pursuant to a warrant that the government presented to a second judicial officer after it had already been denied by a different judicial officer.[5] *See* ECF No. 3-1 at 7–10; ECF No. 7 at 1, 7, 9. *Pace* asserted that "the important questions, from a Fourth Amendment standpoint, are whether the magistrate [judge] . . . was 'neutral and detached,' and whether probable cause . . . existed, not how many magistrate[] [judges] the government applied to before finally obtaining a warrant," further noting that such a rule "in no

---

[5] The government also argues that doctrines of preclusion and estoppel are not applicable in these circumstances. *See* ECF No. 3-1 at 11; ECF No. 7 at 2–4, 6–7. This decision does not rely on such doctrines but rather on the "universally condemned" practice of judge-shopping, which abuses the judicial process and undermines judicial integrity. *Lane*, 56 F.3d 71, 1995 WL 298614, at *2; *see also, e.g.*, *Hernandez*, 138 F.3d at 399.

5

way lessens the Fourth Amendment's protections" because "if the second [magistrate judge's] decision to issue the warrant was incorrect, a reviewing court can eventually suppress the evidence." 898 F.2d at 1230–31.

*Pace*'s only comment on judge-shopping is that "[a]s a practical matter," it "probably does not create a great problem" and, in any case, "[a] blanket rule barring the government from resubmitting a warrant application to a second magistrate [judge] would do little . . . to protect Fourth Amendment values." *Id.* at 1231. The case does not, however, consider the deleterious effects of judge-shopping on important values outside of those protected by the Fourth Amendment, such as "public confidence in the integrity of the judicial process."[6] *Tripp v. Exec. Off. of the President*, 196 F.R.D. 201, 202 (D.D.C. 2000); *see also United States v. Pearson*, 203 F.3d 1243, 1264 (10th Cir. 2000) (stating that "a system that allows prosecutorial judge-shopping arguably lacks 'the appearance of impartiality that is required to obtain the confidence of the public and the accused in the system'" and has the potential to "threaten[] the independence of the judiciary" (quoting *Tyson v. State*, 619 N.E.2d 276, 300 (Ind. Ct. App. 1993))). Nor does it address the way the practice insults other principles important to the orderly functioning of the courts, such as the coordinate jurisdiction rule and the established appellate process.

Nor will this Court condone the practice of magistrate judge-shopping in the hope that application of the exclusionary rule will curb it. *See* ECF No. 7 at 9 & n.5. The exclusionary rule exists to "deter future Fourth Amendment violations" and applies only where "the deterrence benefits of suppression . . . outweigh its heavy costs." *Davis v. United States*, 564 U.S. 229, 236–37 (2011). But, as just discussed, there are important values other than those derived from the

---

[6] *Pace*'s focus is understandable, as it addressed a defendant's contention that his Fourth Amendment rights were violated by an unconstitutional search. The question presented here is somewhat different—whether a federal court should countenance judge-shopping in the context of search warrant applications.

6

Fourth Amendment at stake and worth protecting. More, as courts have recognized, the exclusionary rule is riddled with exceptions. *See, e.g.*, *United States v. Akridge*, 346 F.3d 618, 623 (6th Cir. 2003) ("[T]he exclusionary rule is subject to numerous exceptions that diminish its scope."); *Hector v. Watt*, 235 F.3d 154, 158 (3d Cir. 2000) ("[T]he [Supreme] Court has recognized many exceptions where the exclusionary rule does not apply."); *Roberts v. United States*, 675 F. Supp. 108, 109 (S.D.N.Y. 1987) (noting that the "vitality" of the exclusionary rule has been diminished by the "many . . . exceptions the Supreme Court has created."). Take, for example, the "good faith" exception, by which law enforcement is generally entitled to rely on a magistrate judge's determination that probable cause exists, even if that finding is erroneous. *See, e.g.*, *Leon*, 468 U.S. at 920, 922. The government itself describes a Sixth Circuit case in which

> the prosecutor presented the search warrant application to two judges who *both* refused to sign the warrant. The prosecutor then told a police officer to seek a warrant from a particular judge. The officer first re-submitted the warrant to one of the district judges who previously declined to issue the warrant and he refused again. The officer then took the warrant to the judge whom he knew had a "past conflict" with the defendant and who issued the warrant.

ECF No. 7 at 9 n.5 (citations omitted) (citing *United States v. Czupyrinski*, 8 F.3d 1113 (6th Cir. 1993)). That is, the law enforcement tried four times and three judges before its warrant application was approved. But "*[e]ven* then," the government asserts, "the Sixth Circuit sitting en banc held that the good-faith exception to the exclusionary rule applied." *Id.* (citing *United States v. Czupyrinski*, 46 F.3d 560 (6th Cir. 1995) (en banc)). Finally, in many cases, there will be no opportunity to challenge the appropriateness of seizing evidence pursuant to a judge-shopped warrant, because, for example, the evidence is used in the prosecution of a defendant who did not own the phone searched. *See, e.g.*, *United States v. Savoy*, 889 F. Supp. 2d 78, 86 (D.D.C. 2012) ("[T]o challenge the validity of a search or the introduction of evidence seized therefrom, an individual must have a 'legitimate expectation of privacy' in the place searched." (quoting *Rakas*

7

*v. Illinois*, 439 U.S. 128, 143 (1978))). In short, motions to suppress seeking application of the exclusionary rule are not suited to the task.

The government does suggest that in *extreme* cases judge-shopping might be so egregious as to merit some sort of sanction. *See* ECF No. 7 at 9 n.5. The court in *United States v. Savides*, the decision affirmed in *Pace*, made a similar suggestion, stating that "[h]ad the government visited numerous magistrate[] [judges] before convincing one to issue the disputed warrant, allegations of [judge] shopping would be appropriate." 658 F. Supp. 1399, 1405 (N.D. Ill. 1987). But neither the government nor the *Savides* court explains why magistrate judge-shopping is offensive only if it occurs multiple times in succession and neither provides a benchmark for how many is too many. And, as noted above, the government indicates that even four tries is not sufficient for application of its suggested penalty, the exclusionary rule. *See* ECF No. 7 at 9 n.5 (discussing *Czupyrinski*). Are five tries too many? Ten? Twenty? The undersigned thinks once is enough.

The Court understands that magistrate judges must be sensitive to delaying or interfering with criminal investigations when reviewing search warrants. Here, however, it is the government that complicated the process by failing to follow established procedures for reconsideration and review of adverse judicial decisions. The government appears to fault Judge Spaeth for issuing her opinion two weeks after she denied the warrants before her and asserts that, by then, the target device was in the custody of the FBI in Washington, D.C. *See* ECF No. 7 at 8. But the government transported the phone to D.C. and applied for a warrant before the undersigned to search the phone only five days after her denial, and seven days before her written decision. That timeline suggests that judge-shopping—and not anything that Judge Spaeth did or did not do—was the root cause for the government's actions.[7] Indeed, the motivation for its application before this Court is right

---

[7] Nor is it clear why the government could not immediately have bolstered its warrant application by seeking reconsideration in California rather than the path it took: shipping the phone to D.C. and marshalling arguments before

8

there in its papers: the government repeatedly states that judges on this Court have granted "hundreds, if not thousands" of similar warrants and seeks reversal of Judge Spaeth's "anomal[ous]" decision on that basis. ECF No. 2 at 5; ECF No. 7 at 4; *see also* ECF No. 7 at 8 (suggesting that the government presented the warrant application in this district after its denial in the Central District of California because judges here are "entirely familiar with the January 6 prosecutions"). Seeking reversal of a judge's decision before a coordinate judge that the government thinks will be more favorably disposed to its arguments is the very essence of judge-shopping. Finally, if the government is taking the view that it cannot now seek review of Judge Spaeth's decision in the Central District of California because the phone is no longer there, it cites no support for that position. In any case, the government has shown that it is fully capable of transferring the device between jurisdictions when it serves its interests; the delay that decision now causes any effort to seek reconsideration or appeal in California is its own doing.

\* \* \* \* \*

The decision here is a narrow one. The Court finds only that, as a general matter, when the government has presented an application for a search warrant to one magistrate judge and it has been denied, it cannot then present a substantially similar application for the same target property to a different magistrate judge in the hope of a better outcome. Disallowing the government from judge-shopping its warrant applications is unlikely to burden law enforcement. As both the *Pace* court and the government point out, the practice of presenting a substantially similar warrant application to a second magistrate judge after an initial denial appears to be highly unusual, *see Pace*, 898 F.2d at 1231 ("The parties have been able to uncover only one reported opinion (and we have found no other) besides the district court's opinion in this case that has even

---

the undersigned as to why Judge Spaeth's decision was wrong—other than, again, because it was judge-shopping.

9

addressed the issue of resubmitting a warrant application to a second magistrate [judge]."); ECF No. 7 at 7 (noting that "the case law has not grown appreciably since the Seventh Circuit's decision in *Pace*")—and for good reason.[8]  In any case, such a rule mandates only that the most basic respect be accorded to the decisions of a federal judicial officer and the established processes for reconsideration or review.  That should not be a heavy lift for the government.  Certainly, it is little bother in this case.  The undersigned has spoken with Judge Spaeth.  The Central District of California stands ready to hear any reconsideration or appeal the government may seek of her denial of the government's application to search DeLuca's phone.  Accordingly, the government's application for a search warrant before this Court is **DENIED**.

    **SO ORDERED.**


Date:  May 14, 2024

                                                               G. MICHAEL HARVEY
                                                               UNITED STATES MAGISTRATE JUDGE

---

[8] The Court does not agree—as *Pace* would have it—that the fact that the government's practice here is aberrant is sufficient reason not to prohibit it.