**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF: ONE DIGITAL DEVICE CURRENTLY LOCATED AT 601 4TH STREET NW, WASHINGTON, DC UNDER RULE 41** | **SW No. 24-sw-091** |

**UNITED STATES' REQUEST FOR REVIEW OF THE MAGISTRATE JUDGE'S**
**DENIAL OF SEARCH WARRANT APPLICATION**

The United States, pursuant to Local Rule 59.3 and 28 U.S.C. § 636(b)(3), respectfully submits this request for review of the memorandum opinion issued by Magistrate Judge G. Michael Harvey on May 14, 2024, denying the government's application to search a cell phone (the "Target Device") related to the investigation into the riot at the U.S. Capitol on January 6, 2021. *See* ECF No. 8; *In the Matter of the Search of One Digital Device Currently Located at 601 4th Street NW, Washington, DC Under Rule 41*, No. 24-sw-91 (GMH), 2024 WL 2152740 (D.D.C. May 14, 2024) (hereinafter, the "Magistrate Court's Opinion"). This Court should reverse the Magistrate Court's decision and issue the requested warrant because the warrant complies with the Fourth Amendment and Federal Rule of Criminal Procedure 41. The Magistrate Court's decision to reject a request for a warrant, because the government previously submitted a similar warrant to a different magistrate judge, where the government disclosed the previous denial and provided new information to support probable cause, was error.

First, as explained below, courts have consistently held that the Fourth Amendment "does not prohibit the government from seeking a second magistrate's approval to search when another magistrate denies a search warrant." *United States v. Pace*, 898 F.2d 1218, 1230 (7th Cir. 1990). The only relevant determination for Fourth Amendment purposes is whether the application before the Court at that time supports probable cause to search the digital device and states with

1

particularity the things to be searched. If so, the magistrate judge "must" issue the warrant under Rule 41(d)(1). The government satisfied these requirements. Indeed, Magistrate Judge Robin M. Meriweather found that the government satisfied these requirements in issuing two search warrants covering the Target Device *before* the Central District of California denied a similar warrant.

Rather than evaluate the government's application under the Fourth Amendment, the Magistrate Court took the unprecedented step of imposing freestanding "principles important to the orderly functioning of the courts" on the warrant requirement. 2024 WL 2152740, at *3. The court relied on these principles to impose a novel, bright-line rule precluding successive warrant applications after a denial, out of concern for "magistrate shopping." Such a rule has no basis in the Fourth Amendment or Rule 41. It would result in the suppression of evidence and undermine criminal investigations where, as here, new information is presented to support probable cause.

Second, the Magistrate Court faults the government for engaging in "magistrate shopping." But that is not what occurred. The government sought and received two search warrants that would have allowed the government to search the Target Device in the District of Columbia. Upon learning that the defendant was visiting California, the government sought a similar warrant in the Central District of California, intending to start the search process earlier. That warrant was denied by Magistrate Judge Spaeth without explanation on March 14, 2024. The next morning, law enforcement arrested the defendant and lawfully seized the Target Device incident to arrest. The government asked the Central District of California if the warrant could be amended or any infirmity redressed, but never received a response until nearly two weeks later when the court issued an opinion characterizing the government's evidence from January 6, 2021, as stale and lacking any nexus to the defendant's temporary travel to California. *See* ECF No. 2-1. By that time, the government had already transported the device to Washington, D.C.—where the

investigation is based, where the defendant resides, and where a magistrate judge previously issued two warrants covering the Target Device. And the government had already sought this application, strengthening its probable cause showing and disclosing the previous denial. Against this backdrop, the Magistrate Court's accusations that the government somehow abused the judicial process are misplaced and do not justify a blanket rule prohibiting successive applications after a denial.

This Court, however, need not decide whether the government acted unreasonably in seeking a second magistrate's review (despite disclosing the previous denial and strengthening probable cause). This Court may leave the issue for a motion to suppress at a later stage of the adversarial proceedings, as is permitted by law. But the Magistrate Court went a step further, rejecting, in advance, the exclusionary rule as ill-suited to remedy what it perceived as improper forum shopping. Instead, the Magistrate Court imposed an *ex ante* restriction on the warrant requirement to promote "important values" outside of the Fourth Amendment context. 2024 WL 2152740, at \*4. Declining to issue the warrant *ex ante*, rather than assessing these issues *ex post* in the context of the exclusionary rule, is particularly inappropriate given the Supreme Court's suggestion that the exclusionary rule could be used to deter improper magistrate shopping. *See United States v. Leon*, 468 U.S. 897, 918 (1984).

Finally, the Magistrate Court's Opinion purports not to rely on the "doctrines of preclusion and estoppel," instead relying only "on the 'universally condemned' practice of judge-shopping." 2024 WL 2152740, at \*5. Ignoring the unique and procedurally distinct facts of this case, the practical effect of the Magistrate Court's rule is to preclude the government from submitting a successive warrant application after a denial by a different magistrate judge. Courts have correctly rejected such an approach as "not rational or legally reasonable." *United States v. McCray*, No 15-

cr-212, 2017 WL 3141172, at *11 (N.D. Ga. July 25, 2017). By precluding the government from seeking this successive application, the Magistrate Court effectively gives preclusive effect to the denial in the Central District of California. But that denial is not a final judgment; it merely suggests that the government has not yet met the probable cause threshold. Nothing prevents the government from gathering additional evidence and submitting a new application in a court of competent jurisdiction, as it did here.

The Magistrate Court's Opinion should therefore be reversed and this Court should issue the requested warrant.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Defendant's Arrest on Charges Stemming from the Riot at the U.S. Capitol on January 6, 2021.

On January 6, 2021, a riot at the U.S. Capitol interrupted the certification of the 2020 presidential election. The defendant, Isabella Maria DeLuca, participated in that riot. Around 4:24 p.m., DeLuca, who had breached the Capitol's restricted area, arrived at the temporary inaugural platform constructed on the Lower West Terrace of the U.S. Capitol. ECF No. 1-4, ¶ 46. From there, DeLuca continued to descend the inaugural platform. *Id.* ¶ 47. Around 4:30 p.m., DeLuca arrived in an area near the Lower West Terrace Tunnel (the "Tunnel") and outside of Senate Terrace Room 2 Mezzanine ("ST-2M"), a hideaway office used by members Congress and their staffs. *Id.* Although ST-2M was unoccupied on January 6, it is considered a sensitive location that is not open to members of the public. *Id.* For the next several minutes, DeLuca used her cell phone to record video and/or take photographs outside of ST-2M, witnessing rioters inside the room steal pieces of furniture, including a lamp and a chair, and passing them to the rioters outside. *Id.* ¶ 48. DeLuca then followed suit, entering ST-2M through a broken window and passing a table out of another broken window. *Id.* ¶¶ 49-50. As DeLuca continued to use her cell phone to film, rioters passed

4

the table in the direction of the Tunnel where it was used as a weapon to assault law enforcement officers. *Id.* ¶¶ 51, 55.

On February 28, 2024, U.S. Magistrate Judge Robin M. Meriweather of the U.S. District Court for the District of Columbia issued a warrant for the arrest for DeLuca, finding probable cause that she violated 18 U.S.C. §§ 641, 2 (theft of government property and aiding and abetting theft of government property), 18 U.S.C. § 1752(a)(1) (entering or remaining in restricted buildings or grounds), 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds), 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct in the Capitol Buildings), and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in a Capitol Building). *See United States v. DeLuca*, No. 24-cr-00169, ECF No. 1.

Judge Meriweather also found probable cause to issue a Rule 41 search warrant for DeLuca's person and apartment in Washington, D.C., including any digital devices containing evidence of the riot at the U.S. Capitol on January 6, 2021. *See* ECF No. 1-4.[1] This search warrant specifically covered the Target Device—DeLuca's current cell phone (*see id.* ¶ 73)—which is the subject of the above-captioned search warrant. In support of probable cause, the 61-page affidavit established, among other things, that DeLuca was in possession of a cell phone at the time of the offenses on January 6, 2021. Specifically, DeLuca used her cell phone on January 6, 2021, to make calls originating from Alexandria, Virginia, where her hotel was located, and from several locations in Washington, D.C. near the U.S. Capitol. *Id.* ¶ 72. DeLuca also used her cell phone multiple times during the commission of the offenses, including to record video and/or take photographs outside of ST-2M as rioters looted the office. *Id.* ¶¶ 47-51. DeLuca further used social media on

---

[1] *See also In the Matter of the Search of One Premises and One Person Including Any and All Digital Devices Owned, Used, or Controlled by that Person Under Rule 41*, No. 24-SW-055 (D.D.C.), ECF No. 2.

her cell phone to communicate with others about her travel to Washington, D.C. and the events at the Capitol on January 6, 2021. *Id.* ¶¶ 41, 42-43, 57-62.

Before executing the arrest and search warrants, the Federal Bureau of Investigation ("FBI") learned that DeLuca had recently traveled from Washington, D.C. to Irvine, California, where she was staying with another individual. While law enforcement investigated DeLuca's whereabouts, the search warrant expired on March 12, 2024. The government resubmitted the search warrant with minor amendments and Judge Meriweather reissued it on March 13, 2024.[2] The FBI executed the search warrant at DeLuca's apartment on March 15, 2024, seizing two Apple iPhones, but not the Target Device.

Meanwhile, to locate and arrest DeLuca, the government obtained a search warrant for historical and prospective cell site location information on the Target Device.[3] Upon confirming that DeLuca was staying with another individual at an apartment in Irvine, California, the FBI planned to arrest DeLuca at the apartment on March 15, 2024. The FBI planned on lawfully seizing any digital devices incident to arrest and transporting them back to the FBI's Washington Field Office, the primary agency leading the investigation of DeLuca, who also resides in Washington, D.C. The government nonetheless sought a search warrant for the Target Device in the U.S. District Court for the Central District of California. This warrant would have enabled to government to begin the search of the phone, including data extraction, immediately. The government also sought warrants to search DeLuca's person and to search the premises where DeLuca was staying in the

---

[2] *See* 24-SW-055, ECF No. 6.

[3] *See In the Matter of the Search of the Monitoring of Global Positioning System Information and Cell Site Location Data for One Cell Phone Account Stored at Premises Controlled by One Provider and Search of Information Associated with These Numbers Pursuant to 18 U.S.C. §§ 2703 and 3123 for Investigation of Violation of 18 U.S.C. § 641*, No. 24-SC-465 (D.D.C.), ECF No. 4.

event she was arrested and left the Target Device in the apartment. Those search warrants were substantially similar to the warrants submitted to, and signed by, Judge Meriweather on February 28 and March 13. The only difference was additional information on DeLuca's travel to, and location in, the state of California.

On March 14, 2024, U.S. Magistrate Judge Autumn Spaeth of the U.S. District Court for the Central District of California denied the search warrants in their entirety and without explanation. The undersigned Assistant U.S. Attorney respectfully asked the court whether the warrants could be amended or whether there was a substantive issue with probable cause, but did not receive a response. Based on operational concerns, the FBI arrested DeLuca the next morning. She was arrested in a common area of the apartment building as she was retrieving a package. The FBI lawfully seized the Target Device on her person incident to arrest and transported it to the FBI's Washington Field Office, where it is currently stored.

**B. The Magistrate Court's Opinion in the Central District of California.**

Almost two weeks later, on March 27, 2024, Judge Spaeth issued a memorandum decision denying the search warrants, including a warrant for the Target Device. In that opinion, the court held that the government failed to establish probable cause that evidence of the target offenses would be found on any of DeLuca's cell phones. *See* ECF No. 2-1 at 2. Without discussing any of the relevant factors underlying the staleness doctrine, the court characterized the government's evidence as "impermissibly stale and tenuous" because "[m]ore than three years have passed since the alleged crimes occurred and Defendant is no longer using the same phone." *Id.* at 14. The court's opinion even went so far to suggest that evidence from three years ago is categorically stale and cannot support a warrant "due to the limited likelihood that any cell phone discovered would still contain evidence of the crime." *Id.* at 18. In doing so, however, the court focused on the

existence of probable cause in California, finding "no reason to believe evidence of an event that occurred over three years ago in Washington, D.C. would have been transported across the country to the location to be searched." *Id.* at 2. Indeed, the court emphasized that "[t]he facts provided to the Court merely suggest that Defendant is visiting the area" and that "there is no evidence" that the digital devices "still exist" or are "in Defendant's possession in California." *Id.* at 9, 15. The Central District of California's concerns about a geographic nexus between the crimes and the items to be searched—although misplaced from the government's perspective—have since become moot. As explained below, the Target Device is now in the possession of the FBI in Washington, D.C., where there is a direct nexus to both the defendant and the charged offenses.

### C.  The Current Application and the Magistrate Court's Opinion in the District of Columbia.

By the time Magistrate Judge Spaeth issued her opinion, the Target Device was already in the custody of the FBI in Washington, D.C. and the government had already filed the instant application. *See* ECF No. 1-5. In the application, the government disclosed that Magistrate Judge Spaeth had denied the California application for a warrant to search the Target Device. *Id.* ¶ 21. The government also offered to provide copies of the denied warrant package to the court, which it later did at the request of the court. The application was assigned to Magistrate Judge Harvey and submitted by email on March 20, 2024. Magistrate Judge Harvey later directed the government to file the same application with a supporting memorandum of law on the docket (*see* ECF No. 1-1), which the government did on March 28, 2024. The application incorporates by reference the statement of facts in the criminal case and the search warrant approved by Magistrate Judge Meriweather on March 13. *See* ECF Nos. 1-3, 1-4.

Although this application submitted to Magistrate Judge Harvey is similar, it is *not* identical to the one granted by Magistrate Judge Meriwether or the one denied by Magistrate Judge Spaeth.

The application assigned to Magistrate Judge Harvey includes additional facts that strengthen the government's showing of probable cause that evidence of the crimes charged will be found on the Target Device:

- First, based on financial records, the defendant pays for Apple iCloud storage, which would allow her to transfer data seamlessly from one Apple device to another, including the Target Device. *See* ECF No. 1-5, ¶ 27.

- Second, the application explains that the FBI recovered two Apple iPhones at the defendant's apartment in Washington, D.C.—one of which is likely the phone the defendant possessed on January 6, 2021[4]—further suggesting the routine capability to transfer data across Apple devices, including the Target Device. *See* ECF No. 1-5, ¶ 11. These two facts were not presented in the application before Judge Spaeth, who articulated concerns about the transferability of data across devices. *See* ECF No. 2-1 at 16. In fact, Judge Spaeth's concerns about whether the device used on January 6 still existed or was even an Apple product turned out to be mistaken. *Id.* At 15-16.

- Third, since submitting this application, the government confirmed through legal process that the defendant has possessed an iCloud account since May 2018, to which she has

---

[4] One of the phones recovered is an Apple iPhone SE. The other phone recovered is an Apple iPhone in a pink case, but it is too badly damaged to be charged or powered on. This is likely the iPhone the defendant possessed on January 6, 2021, because it appears to be the same phone in a pink case that the defendant can be seen using in the footage and photographs reproduced in the affidavit. *See* ECF No. 1-4, Images 5, 6, 7, 10, and 12.

registered several devices including an Apple iPhone 14 Plus, matching the Target Device.[5] In short, the government provided additional evidence showcasing probable cause that evidence of a crime would likely be found on the Target Device in question.

On April 1, 2024, the government filed a supplemental brief with Magistrate Judge Harvey challenging Magistrate Judge Spaeth's rationale for the denying the warrant to search the Target Device. *See* ECF No. 2. In that brief, the government explained how the Magistrate Judge Spaeth's opinion is limited to the existence of probable cause in California and how the court's concerns about "a geographic nexus between the crimes and items to be searched" have been obviated by returning the Target Device to a jurisdiction with a direct connection to the defendant and the charged offenses. *Id.* at 7. The government also explained why the opinion's concerns about staleness were misguided. *See id.* at 4-7. For example, the opinion did not address "the affidavit's intentional and thorough discussion of searches that continue to yield discovery of evidence—to this day—of the conduct on January 6, 2021." *Id.* at 5. Rather, the opinion, in conclusory fashion, characterized the government's evidence as stale, but failed to address "the temporal considerations" underlying the staleness doctrine or "the nature of digital evidence" where "the passage of time does not necessarily render [such] evidence stale." *Id.* at 5, 6.[6]

The government further explained why Magistrate Judge Spaeth's concerns about the data transferability across digital devices was erroneous, rendering the court's earlier probable cause determination moot. *See* ECF No. 2 at 6-7. The opinion relied on the fact that the defendant has

---

[5] The government will resubmit the search warrant with this additional fact about if the Court finds it material to its probable cause analysis.

[6] The current application explains that files on digital devices "can be recovered months or even may years after they have been downloaded" and that deleted files "can be recovered months or years later using readily available forensics tools." Indeed, the ability to retrieve "an electronic file from a digital device depends less on when the file was downloaded or viewed than on a particular user's operating system" and "storage capacity." ECF No. 1-4, ¶ 80(c).

owned two phones, including the Target Device, since possessing the phone used during the commission of the offenses on January 6, 2021. Specifically, the opinion declined "to infer that Phone 1 was transferred to Phone 2 and then to Phone 3, because some service providers have this ability and many people do it." ECF No. 2-1 at 16. As explained above, however, the defendant has Apple iCloud storage, allowing her to transfer data seamlessly from one device to another, including the Target Device. *See* ECF No. 2 at 6. The opinion further faulted the government for failing to proffer "facts to show that Phone 1, used on the day of the alleged crimes, was an iPhone or even an Apple product." ECF No 2-1 at 16. Upon executing the search warrant at the defendant's apartment in Washington, D.C., the government learned that both recovered phones are, in fact, Apple iPhones—one of which is likely the phone the defendant possessed on January 6, 2021 (*i.e.*, Phone 1 in the Spaeth Opinion). *See* ECF No. 2 at 6-7. These additional facts negated the previously explained concerns about the transfer of data to the Target Device in evaluating probable cause.

On April 12, 2024, Magistrate Judge Harvey converted this search warrant application into an adversarial proceeding and requested full briefing on "the propriety of the government's submission of a successive warrant application seeking authorization to conduct a search previously denied by a magistrate judge in another jurisdiction, and whether this Court may consider that application notwithstanding any finding it may make with respect to probable cause." ECF No. 5 at 6. On April 29, 2024, the defendant filed a one-page response arguing that the warrant "violate[s] the first principle of res judicata." ECF No. 6, ¶ 3. On May 9, 2024, the government filed its reply explaining why principles of estoppel do not apply to search warrants. ECF No. 7.

Magistrate Judge Harvey issued his memorandum opinion denying the search warrant application on May 14, 2024. In the Opinion, the Magistrate Court did not address whether the

government's search warrant established probable cause to search the Target Device. Instead, citing cases outside of the search warrant context, the Magistrate Court relied on "principles important to the orderly functioning of the courts, such as the coordinate jurisdiction rule and the established appellate process" to conclude that the government engaged in "magistrate shopping." *Id.* at *3. In doing so, the Magistrate Court rejected the reasoning of the only circuit court to consider the propriety of submitting successive search warrants to different magistrate judges, *see United States v. Pace*, 898 F.2d 1218 (7th Cir. 1990), asserting that the decision failed to "consider the deleterious effects of judge-shopping on important values outside of those protected by the Fourth Amendment." 2024 WL 2152740, at *3.

The Magistrate Court also declined to apply the exclusionary rule to deter what it viewed as magistrate shopping, finding that motions to suppress "are not suited to the task." *Id.* at *4. The Magistrate Court reasoned that "the exclusionary rule is riddled with exceptions" and cited the possibility that "there will be no opportunity to challenge the appropriateness of seizing evidence pursuant to a judge-shopped warrant, because, for example, the evidence is used in the prosecution of a defendant who did not own the phone searched." *Id.* According to the Magistrate Court, only an *ex ante* restriction on magistrate shopping would promote "important values" outside of the Fourth Amendment context. *Id.*

The Magistrate Court characterized its decision as "a narrow one," but adopted a bright-line rule denying any search warrant after a previous denial by a different magistrate judge. *Id.* at *5. The government had acknowledged, consistent with case law, that "in *extreme* cases judge-shopping might be so egregious as to merit some sort of sanction." *Id.* at *4 (emphasis in original) (citing *United States v. Savides*, 658 F. Supp. 1399, 1405 (N.D. Ill. 1987) ("Had the government visited numerous magistrates before convincing one to issue the disputed warrant, allegations of

12

forum shopping would be appropriate")). But the Magistrate Court declined to consider "a benchmark for how many is too many." 2024 WL 2152740, at *4. One successive search warrant application was "enough" to merit the denial of the application. *Id.* In the Magistrate Court's view, the fact that the application was *not* identical to the one denied in the Central District of California did not matter because any new facts supporting probable cause should have been submitted in a motion seeking reconsideration of Judge Spaeth's denial. *Id.* at *1 n.2.

Finally, while "sensitive to delaying or interfering with criminal investigations when reviewing search warrants," the Magistrate Court faulted the government for "failing to follow established procedures for reconsideration and review of adverse judicial decisions." *Id.* at *4. The Magistrate Court indicated that the government should return the Target Device to the Central District of California where it could seek reconsideration of Judge Spaeth's decision. *Id.* at *4-5. The Magistrate Court concluded by describing its decision as "a narrow one." *Id.* at *5. According to the court, "when the government has presented an application for a search warrant to one magistrate judge and it has been denied, it cannot then present a substantially similar application for the same target property to a different magistrate judge in the hope of a better outcome." *Id.*

## **STANDARD OF REVIEW**

Pursuant to Local Rule 59.3(b) of the U.S. District Court for the District of Columbia, this Court may review the Magistrate Court's determination *de novo*. *See In the Matter of the Search of Twenty-Six Digital Devices and Mobile Device Extractions*, No. 21-sw-233, 2022 WL 998896, at *6 (D.D.C. Mar. 14, 2022).

**ARGUMENT**

**I.    The Magistrate Court Must Issue a Search Warrant Supported by Probable Cause Under the Fourth Amendment and Rule 41.**

The Magistrate Court did not undertake any Fourth Amendment analysis of the government's requested search warrant, including whether the warrant establishes probable cause to search the Target Device. Instead, the Magistrate Court imposed freestanding "principles important to the orderly functioning of the courts" on the warrant requirement. Those principles have no basis in the Fourth Amendment or Federal Rule of Criminal Procedure 41, which do "not prohibit the government from seeking a second magistrate's approval to search when another magistrate denies a search warrant." *Pace*, 898 F.2d at 1230.

The Warrant Clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court has long explained that the "precise and clear" words of the Warrant Clause require "only three things" for the issuance of a warrant: it must be issued by a neutral magistrate; it must be based on a showing of "probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense"; and it must satisfy the particularity requirement. *Dalia v. United States*, 441 U.S. 238, 255 (1979); *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 554 (1978).

Nothing more is required by the Fourth Amendment. Moreover, Rule 41 places an affirmative obligation on a magistrate judge to issue a warrant that satisfies the Fourth Amendment. Rule 41 states that a magistrate judge "*must* issue the warrant if there is probable cause to search for and seize a person or property." Fed. R. Crim. P. 41(d)(1) (emphasis added). Rule 41 itself "reflects '[t]he Fourth Amendment's policy against unreasonable searches and seizures.'" *Zurcher*,

436 U.S. at 558 (quoting *United States v. Ventresca*, 380 U.S. 102, 105 n.1 (1965)); *see also United States v. Haywood*, 464 F.2d 756, 760 (D.C. Cir. 1972) (stating that "Rule 41 embodies standards which conform with the requirements of the Fourth Amendment").

Here, the requested warrant satisfies these three elements. There is no dispute that this Court and the Magistrate Court are neutral and detached judicial officers.

Second, Attachment A identifies with particularity the property to be searched; it is limited to one specific Target Device, describing its location and its make, model, and case. And Attachment B identifies with particularity the items to be seized; it is limited to evidence related to the commission of the crimes charged. It further specifies the type of evidence that may be seized, to include, among other things, text messages, video, photographs, and social media, etc. from the narrow time period of November 3, 2020 to March 31, 2021.

Third, a magistrate judge considering the warrant application must determine whether, in light of all the circumstances described in the supporting affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Here, the affidavit establishes probable cause to believe that the information identified in Attachment B and located in the place described in Attachment A will constitute evidence of the charged crimes. The defendant possessed a cell phone while at the U.S. Capitol on January 6, 2021, using that device on multiple occasions to record video and/or take photographs. *See* ECF No. 1-5 ¶¶ 47-51. Specifically, the defendant recorded video outside of ST-2M, witnessing rioters inside the room steal pieces of furniture, including a lamp and a chair, and passing them to the rioters outside. *Id.* ¶ 48. This video could provide evidence of the defendant's state of mind when she entered ST-2M through a broken window and did the exact same thing— stealing a table and passing it to rioters outside where it was subsequently used as a weapon against

law enforcement officers. The defendant also used social media on that device to communicate with others about her travel to Washington, D.C. and the events at the U.S. Capitol on January 6, 2021. *Id.* ¶¶ 41-43, 57-61. According to business records, the defendant has an Apple iCloud account, which would allow her to transfer messages, videos, and photographs seamlessly between her Apple devices, including the Target Device. The defendant also appears to have registered the Target Device to her iCloud account. The government has therefore demonstrated ample probable cause to believe that the Target Device likely holds evidence of the charged offenses and possibly other related offenses.

Accordingly, if this Court finds that the instant application complies with the requirements of the Fourth Amendment's Warrant Clause and Rule 41, then the Court must issue the search warrant as requested. *See* Fed. R. Crim. P. 41(d)(1); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988) ("federal courts have no more discretion to disregard [a] Rule's mandate than they do to disregard constitutional or statutory provisions"). Judge Meriweather properly found that the government established these elements twice when she issued a similar search warrant on February 28 and reissued it on March 13—a fact which the Magistrate Court relegates to a footnote and suggests is not relevant to its analysis. 2024 WL 2152740, at *2 n.4. The government's search warrant application therefore complies with the requirements of the Fourth Amendment and with the provisions for issuing and executing search warrants in Rule 41.

This conclusion is compelled by the Seventh Circuit's decision in *United States v. Pace*, 898 F.2d 1218 (7th Cir. 1990), which the Magistrate Court declined to follow. According to the Magistrate Court, *Pace* does not "consider the deleterious effects of judge-shopping on important values outside of those protected by the Fourth Amendment, such as public confidence in the integrity of the judicial process." 2024 WL 2152740, at *3 (internal quotation marks omitted). But

*Pace does* consider the propriety of a successive search warrant application after a denial under the rubric of the Fourth Amendment.

*Pace* involved a narcotics distribution investigation. During that investigation, the government submitted a warrant to search an office used by the defendant. The search warrant relied on surveillance of the defendant's daily routine: the defendant would drive circuitously to the office building, enter the office for a brief period, leave the office, make calls on a pay phone, and meet people (some of whom were known cocaine dealers) at restaurants, bars, and parking lots. *Id.* at 1224-25. A magistrate judge denied the warrant, finding that the affidavit did not establish probable to search the office. The government then presented the same warrant to the chief magistrate judge after the magistrate judge said he did not object to another judge reviewing the affidavit. *Id.* at 1225. The chief magistrate judge issued the warrant, and the search of the office uncovered cocaine and associated paraphernalia. *Id.* On appeal, the defendant contended that the district court erred by denying his motion to suppress the evidence found when law enforcement agents searched his office.

The Seventh Circuit rejected the defendant's argument that the magistrate judge's denial was final and binding, and therefore estopped the government from resubmitting the same search warrant application:

> [The defendant], in essence, is asking us to suppress evidence from a search conducted pursuant to a warrant issued by a "detached and neutral magistrate" who properly (we presume) found that probable cause existed to search, simply because another magistrate had refused to issue a warrant based on the same showing by the government. But, assuming that probable cause actually existed and the government withheld no material information, the government did all the Fourth Amendment required.

> The Fourth Amendment on its face does not prohibit the government from seeking a second magistrate's approval to search when another magistrate denies a search warrant. The Fourth Amendment commands only that a "neutral and detached magistrate" determine that probable cause exists. Thus, the important questions,

from a Fourth Amendment standpoint, are whether the magistrate really was "neutral and detached," and whether probable cause actually existed, *not how many magistrates the government applied to before finally obtaining a warrant*.

*Id.* at 1230-31 (emphasis added). In so holding, the Seventh Circuit relied on the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978), which held that, even where a defendant makes a showing that the government lied to the magistrate judge, no hearing is required if other material in the warrant suffices to show probable cause. *See id.* at 171-72. The Seventh Circuit explained that submitting false information to the magistrate judge "subverts the Fourth Amendment's warrant requirement because deliberately falsified information could mislead a magistrate into finding probable cause and issuing a warrant where he might otherwise not do so." *Pace*, 898 F.2d at 1231. "Yet," the Seventh Circuit continued, "the Court is willing to let a warrant stand if absent the false information probable cause still exists, even though the magistrate himself might have thought the facts important in finding probable cause." *Id.* Based on the standard articulated in *Franks*, the Seventh Circuit inferred that "[t]here is even less reason to suppress evidence from a search pursuant to a warrant issued by a magistrate who properly found probable cause" even if that exact same warrant was previously denied. *Id.*

The Seventh Circuit further explained that the resubmission of a search warrant comports with Fourth Amendment values, rejecting the defendant's unsubstantiated concerns about magistrate judge shopping:

> This approach in no way lessens the Fourth Amendment's protections: if the second magistrate's decision to issue the warrant was incorrect, a reviewing court can eventually suppress the evidence. [The defendant] contends that allowing the government to resubmit a rejected warrant application to a second magistrate will lead to "magistrate shopping," thus deprecating the magistrate's role and diminishing the warrant requirement to a mere rubber-stamping process. As a practical matter, the kind of "magistrate shopping" [the defendant] envisions probably does not create a great problem. The parties have been able to uncover only one reported opinion (and we have found no other) besides the district court's opinion in this case that has even addressed the issue of resubmitting a warrant

application to a second magistrate. Moreover, the defendant can still assert that probable cause did not exist to issue the warrant (a challenge [the defendant] has made here), or that the applying officer knew that the second magistrate was not the "detached, neutral magistrate" the Fourth Amendment requires. *A blanket rule barring the government from resubmitting a warrant application to a second magistrate would do little, if anything, to protect Fourth Amendment values. Such a rule would, however, cause courts to suppress evidence found in searches pursuant to warrants issued on probable cause.*

Id. at 1231 (emphasis added) (citations omitted).[7] The Seventh Circuit ultimately upheld the district court's denial of the defendant's suppression motion.

Several district courts have adopted *Pace*'s reasoning. Those courts have found that the denial of an application for a search warrant does not preclude the government from presenting the same or similar application to a second magistrate. *See United States v. McCoy*, 678 F. Supp. 2d 1336, 1351 (M.D. Ga. 2009) ("The Court finds that, because the Fourth Amendment and *Franks*

---

[7] The one reported opinion is *United States v. Davis*, 346 F. Supp. 435 (S.D. Ill.1972). In *Davis*, the ATF executed a search warrant at a licensed gun dealer's residence seizing numerous firearms. Two days later, the ATF presented a second search warrant application for the residence to a magistrate judge, who refused to authorize another search of the residence. *Id.* at 438. The agents then presented a third, "identical" application to a different magistrate judge, who then signed the proposed warrant. *Id.* at 442 (noting that the agents literally "inked out" the first judge's name and replaced it with the second judge's name, without making any other changes). The district court held that the denial of the second warrant was "final and binding" and thus "equitably estopped" the third warrant issued "on the exact same showing." *Id.* The court further explained that the second and third warrants lacked probable cause to search the residence for a second time to recover firearms that had no relation to the allegedly illegal sales.

*Davis* is inapposite for several reasons. First, *Davis* held that the successive third warrant lacked probable cause to seize the entirety of the defendant's gun collection. The court did not, however, hold estoppel on its own would render an otherwise constitutional search unconstitutional, as would be the case here if the Court finds probable cause, but gives preclusive effect to Judge Spaeth's decision. Second, the facts in *Davis* are distinguishable. For the reasons explained above, the warrant here is *not* identical to the one denied in the Central District of California, and the government has probable cause to search the target device. Third, Davis has been criticized for its reliance on principles of equitable estoppel that have no bearing on a magistrate judge's review of a search warrant. *See* 2 Wayne R. LaFave, Search and Seizure, § 4.2(e). And to the extent *Davis* held that a successive search warrant should be equitably estopped, that holding has been overruled by the Seventh Circuit's more recent decision in *Pace*.

*v. Delaware* allow for the re-application of a previously denied search warrant request, a Federal Magistrate Judge's denial of a search warrant application cannot be a final judgment on the merits"); *United States v. Prine*, No. 17-cr-20, 2018 WL 2710689, at *7 (W.D. Ky. June 5, 2018) (declining to apply doctrine of res judicata to invalidate submission of an earlier search warrant to a different magistrate judge after it had been denied); *McCray*, 2017 WL 3141172, at *11 (holding that law enforcement officers were not estopped from obtaining a search warrant in a different county after a judge denied the warrant); *United States v. Sotto*, No. 06-20322, 2006 WL 8433713, at *2 (S.D. Fla. Sept. 6, 2006) (rejecting "claim of judge-shopping" where "the agent first applied to one magistrate judge and subsequently presented a slightly modified affidavit to another magistrate judge"); *see also* 2 Wayne R. LaFave, Search and Seizure, § 4.2(e).

This Court should do the same here. The denial of a search warrant does not preclude the government from presenting a similar application to a second magistrate after disclosing the previous denial, as the government did here. Under the Fourth Amendment, a magistrate judge's ruling on a search warrant application has no bearing on any matter other than that application being presented at that time. *See Pace*, 898 F.2d at 1231; *see also Gates*, 462 U.S. at 238 ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."). As one state court explained, "constitutional principles do not restrain law enforcement officials from seeking successive authorizations before different Magistrates . . . when one Magistrate may initially decline to issue a search warrant for a myriad of reasons on or off the record, whatever that may be in such matters." *People v. Bilsky*, 734 N.E.2d 341, 344 (N.Y. 2000) (citing *Pace*, 898 F.2d at 1230). Because the search warrant establishes probable cause, and neither the Fourth Amendment

nor Rule 41 prohibits successive applications after a denial, the Court must issue the requested search warrant.

Despite the plain language of Rule 41(d) that a magistrate judge "must issue the warrant if there is probable cause," the Magistrate Court's Opinion suggests that issuing the requested search warrant after a denial by a different magistrate judge would somehow violate Rule 41(d)(1). 2024 WL 2152740, at *3. The Magistrate Court fails to cite any language in Rule 41 supporting this novel interpretation. According to the Magistrate Court, there is nothing "in Rule 41 to suggest that the proper procedure is to ask a different magistrate judge in a different jurisdiction for a better result." *Id*. But that argument cuts both ways. There is also nothing in Rule 41 that prohibits a successive application in a second district after denial of a similar application in the first district. *See In re [REDACTED]@gmail.com*, 62 F. Supp. 3d 1100, 1105 (N.D. Cal. 2014) ("nothing in Rule 41 specifically prohibits this type of follow-up request in a second district after denial of an application in the first").[8] In the absence of any provision in Rule 41 addressing re-submissions, the existing language of Rule 41(d) controls: a magistrate judge "*must* issue the warrant if there is probable cause to search for and seize a person or property." Fed. R. Crim. P. 41(d)(1) (emphasis added). Nor does Rule 41 require the government to seek reconsideration or an appeal of a denied search warrant before presenting a similar application, with new information supporting probable cause, to a second magistrate. Congress could have written Rule 41 to prohibit or even

---

[8] The Magistrate Court cited to this Northern District of California case for the proposition that "there is a long-recognized presumption against duplicating court efforts—what some charitably call judge-shopping." 2024 WL 2152740, at *3 (quoting 62 F. Supp. 3d at 1104). In that case, the government sought a "general" warrant for electronic data in the Northern District of California after a previous application for a similar warrant had been denied in the District of Columbia. The court denied the warrant as overbroad because, among other things, there was "no date restriction of any kind" and the government made no "commitment to return or destroy evidence that is not relevant to its investigation." *Id.* at 1104. Those overbreadth concerns are neither raised nor present here.

circumscribe successive applications, or to require reconsideration after a denial. But it did not do so—and likely for good reason. A prohibition on successive warrant applications, even where new information is presented, would suppress evidence and short-circuit criminal investigations, which are always changing and evolving. And a requirement to seek reconsideration or appeal could lead to undue delay in such investigations.

As courts across the country have held, nothing in the Fourth Amendment or Rule 41 "prohibit[s] the government from seeking a second magistrate's approval to search when another magistrate denies a search warrant." *Pace*, 898 F.2d at 1230. The Magistrate Court erred in concluding otherwise and by elevating prudential or policy concerns about forum shopping over the Fourth Amendment's requirements and Rule 41(d)(1)'s mandate. The Supreme Court has explicitly held that a federal court may not formulate procedural rules that conflict with the Federal Rules of Criminal Procedure. *See Bank of Nova Scotia*, 287 U.S. at 255 ("federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions"). "To allow otherwise 'would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing.'" *Id.* at 254 (quoting *United States v. Payner*, 447 U.S. 727, 737 (1980)). Because the Magistrate Court disregarded Rule 41(d)(1)'s express mandate, this Court should reverse and issue the requested warrant.

## II.   The Government Properly Disclosed the Denial and Strengthened Probable Cause in Submitting a New Warrant in the District Where the Investigation is Based.

Sidestepping Fourth Amendment principles, the Magistrate Court nonetheless concluded that the government engaged in "magistrate shopping" and "eschewed established procedures for reconsideration or appeal of Magistrate Judge Spaeth's ruling." 2024 WL 2152740, at *2. That is simply not what occurred. The Magistrate Court did not address several key facts that militate against any suggestion of improper "magistrate shopping." And the Magistrate Court's Opinion

employed the wrong remedy at the wrong stage of the proceedings to deter what it perceives as improper "magistrate shopping."

The government previously sought and received two search warrants, supported by probable cause, that would have allowed the government to search the target device in the District of Columbia. Upon learning that the Defendant was visiting California, the government sought a similar warrant in a different district, intending to start the search process earlier, which was denied without explanation on the evening of March 14, 2024. The next morning, due to operational concerns, the FBI arrested the Defendant and lawfully seized the target device incident to arrest. The government then transported the device to Washington, D.C.—where the investigation was and is based, where the Defendant resides, and where the Court previously issued two search warrants covering the device.

Almost two weeks later, on March 27, 2024, Judge Spaeth issued her memorandum decision. For nearly two weeks, the government had no order to appeal, no idea why its application was deficient, and no indication that any order or opinion would be forthcoming. By the time the court issued its decision, the target device was already in the custody of the FBI in Washington, D.C. and the government had already filed the instant application *disclosing* the previous denial. This is simply not the case of the government going from magistrate judge to magistrate judge in bad faith because its search warrant lacks probable cause or is otherwise deficient. *See Savides*, 658 F. Supp. at 1405 ("Had the government visited numerous magistrates before convincing one to issue the disputed warrant, allegations of forum shopping would be appropriate"). Nor is it a case where the government sought a more favorable judge without explanation. Instead, the government properly disclosed the denial by Judge Spaeth, sought legal process in the district where investigation is based and the defendant resides, and did so before having any order in hand,

while simultaneously strengthening its probable cause showing further. These circumstances are a far cry from "conduct which abuses the judicial process." 2024 WL 2152740, at *2.

Moreover, there is no legal requirement for the government to seek reconsideration or to appeal the denial of a search warrant—especially where, as here, the government submits new information in support of probable cause. The only relevant determination for Fourth Amendment purposes is whether the application before the Court supports probable cause at the time to search the Target Device. *See Pace*, 898 F.2d at 1230-31; Fed. R. Crim. P. 41(d)(1). Even if that requirement existed, nearly two weeks had passed before issuance of a written order explaining Magistrate Judge Spaeth's rationale for the denying the warrant. During that period of uncertainty, the government had already lawfully seized the device, transported the device back to the jurisdiction that has a direct connection the defendant and the investigation, and submitted a new warrant with additional facts supporting probable cause, while disclosing the prior denial.[9] That is hardly improper or unreasonable.

Notwithstanding the Magistrate Court's concerns, the Seventh Circuit has explained that concerns over "magistrate shopping" in successive search warrant applications are misplaced. *Pace*, 898 F.2d at 1231. Disclosing the prior denial in the first instance "lessens the potential for inappropriate 'Judge shopping' and alerts the different Magistrate fully to earlier developments, or nondevelopments, so that appropriate inquiry and consideration may be given for a fully informed judgment and decision on the matter at hand." *Bilsky*, 734 N.E.2d at 344; *see also United*

---

[9] To remedy concerns about forum shopping, the Magistrate Court indicated that the government should ship the device back to the Central District of California to seek reconsideration of Judge Spaeth's ruling. 2024 WL 2152740, at *2. But the oddity of that proposal is that it asks the government to do the very thing—transport the device from one district to another—that the court found to be problematic in taking advantage of "Rule 41(b)'s fluid venue provisions." 2024 WL 2152740, at *3. And it asks the government to return the device the district where there is less of a connection between the defendant, the charged offenses, and the forum.

*States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1175 (9th Cir. 2010) (en banc) ("[W]e emphasize that, while the government is free to pursue warrants, subpoenas and other investigatory tools, and may do so in whichever judicial district is appropriate in light of the location of the information sought, it must fully disclose to each judicial officer prior efforts in other judicial fora to obtain the same or related information, and what those efforts have achieved."); 2 Wayne R. LaFave, Search and Seizure, § 4.2(e) ("[I]t does not seem unreasonable for the warrant applicant to present his affidavit to another magistrate, particularly when . . . he discloses the proceedings before the first magistrate."). That is precisely what the government did in the application before Magistrate Judge Harvey.

But this Court need not decide whether the government engaged in magistrate shopping. Nor does it need to engage in any line drawing about what constitutes improper forum shopping. This Court can decide at later stage whether application of the exclusionary rule is warranted to deter what the Magistrate Court perceived as improper judge shopping. The Magistrate Court went reversed the order of process, however, determining that the exclusionary rule is "not suited to the task" because it "is riddled with exceptions" and cannot prevent the government from using the evidence "in the prosecution of a defendant who did not own the phone searched." 2024 WL 2152740, at *4. According to the Magistrate Court, only an *ex ante* restriction on forum shopping would promote "important values" outside of the Fourth Amendment context. *Id.*

The Magistrate Court's approach has no basis in the Fourth Amendment. The legal remedy to deter the forum shopping the Magistrate Court is concerned about is to suppress the evidence in an Article III setting. *See Pace*, 898 F.2d at 1231 ("[I]f the second magistrate's decision to issue the warrant was incorrect, a reviewing court can eventually suppress the evidence."). Indeed, the Magistrate Court's Opinion cites to *United States v. Leon*, 468 U.S. 897 (1984), to suggest that the

Supreme Court has expressed concerns about magistrate shopping in the context of search warrant applications. 2024 WL 2152740, at *3. In *Leon*, the Supreme Court stated that "one could argue that applying the exclusionary rule in cases *where the police failed to demonstrate probable cause in the warrant application* deters futures inadequate presentations or 'magistrate shopping' and thus promotes the ends of the Fourth Amendment." *Leon*, 468 U.S. at 918 (emphasis added). In other words, the Supreme Court anticipated that the exclusionary rule would be the proper remedy for improper magistrate shopping or magistrate shopping where the government lacks probable cause—a suggestion which the Magistrate Court rejected.[10]

Ultimately, the government has a good-faith basis to seek this warrant, has strengthened its evidentiary bases to search the Target Device, and voluntarily disclosed the original denial to the Magistrate Court. Given those developments, the Magistrate Court's accusations of magistrate shopping, let alone insinuations of bad faith, miss the mark. In any event, the proper remedy for alleged forum shopping is to employ the exclusionary rule *ex post*, not to preclude the government *ex ante* from submitting another application with new information in support of probable cause.

---

[10] Courts have applied the exclusionary rule to exclude evidence that resulted from blatant magistrate shopping. For example, in *United States v. Czuprynski*, 8 F.3d 1113 (6th Cir. 1993), a Sixth Circuit panel held that "some 'judge-shopping' took place in the overall effort to obtain a search warrant for Czuprynski's home and office." There, the prosecutor presented the search warrant to two judges who both refused to sign the warrant. *Id.* at 1115. The prosecutor then told a police officer to seek a warrant from a particular judge. *Id.* The officer first re-submitted the warrant to one of the district judges who previously declined to issue the warrant and he refused again. *Id.* The officer then took the warrant to the judge whom he knew had a "past conflict" with the defendant and who issued the warrant. *Id.* at 1118. Sitting en banc, the Sixth Circuit, over the dissent of four judges, held that the good-faith exception to the exclusionary rule applied because the police officer acted in good faith—in part because he was unaware of the prior denials. *See United States v. Czuprynski*, 46 F.3d 560 (6th Cir. 1995) (en banc).

III.    **The Magistrate Court's Opinion Precludes the Government from Seeking Successive Warrants Even Where New Information Is Presented.**

The Magistrate Court's Opinion purports to be a narrow one in announcing a new prophylactic rule: "when the government has presented an application for a search warrant to one magistrate judge and it has been denied, it cannot then present a substantially similar application for the same target property to a different magistrate judge in the hope of a better outcome." 2024 WL 2152740, at *5. The Magistrate Court's Opinion also disavows any reliance on the "doctrines of preclusion and estoppel," instead relying only "on the 'universally condemned' practice of judge-shopping." *Id.* at *3 n.5. But the practical effect of the Magistrate Court's purportedly narrow rule is to preclude the government from submitting a successive warrant application after a denial. Courts have correctly rejected such an approach as "not rational or legally reasonable." *McCray*, 2017 WL 3141172, at *11. A "blanket rule" precluding the government from seeking successive search warrants, even where new information is presented, would "suppress evidence" supported by probable cause and undermine ongoing criminal investigations. *Pace*, 898 F.2d at 1231.

Moreover, by preventing the government from seeking this successive application, and declining to engage in a probable cause analysis, the Magistrate Court effectively gave preclusive effect to Magistrate Judge Spaeth's ruling. That was error. Judge Spaeth's denial is not a final judgment on the merits. It is merely a denial of "a search warrant application where evidence was being sought to support a potential allegation of a criminal violation." *McCoy*, 678 F. Supp. 2d at 1349. Indeed, "a finding that probable cause is lacking states nothing more than that the Government has not yet met the threshold. Nothing prevents the Government from gathering more evidence and making more attempts until the threshold is achieved, similar to the Supreme Court permitting the Government to submit its evidence to later grand juries following a grand jury's return of no true bill." *Id.* at 1351. A finding of no probable cause (or even a finding of probable

cause) is, by definition, not final or permanent. *See Savides*, 658 F. Supp. at 1404 ("A probable cause determination on an application for a search warrant by a magistrate is not a final order."). But the Magistrate Court's Opinion effectively treats Judge Spaeth's ruling as binding and final.

Rather than undertake its own probable cause analysis, as it was required to do, the Magistrate Court erred in deferring to Magistrate Judge Spaeth's probable cause determination. Judge Spaeth's opinion appears to be an anomaly as one of the only courts in the nation to write that evidence from January 6, 2021 is "impermissibly stale and tenuous," ECF No. 2-1 at 14, a finding which contradicts hundreds, if not thousands, of search warrants approved by this Court and other courts across the country in connection with the January 6 investigation over the course of the last three years. The opinion concludes that the government's evidence is stale without accounting for the very evidence addressing staleness—a detailed discussion of recent searches that continued to yield evidence of the conduct on January 6, 2021. And the opinion did not even address the legal principles underlying the staleness doctrine, including how the passage of time does not necessarily render digital evidence stale. The Magistrate Court seizes on this critique as proof of the government's purported "motivation" to judge shop and seek reversal of Magistrate Judge Spaeth's ruling. 2024 WL 2152740, at *4. Yet the Magistrate Court's Opinion appears to ignore the other motivating factor embedded within Judge Spaeth's ruling: the nexus of the defendant and the Target Device to the Central District of California.

All of this, of course, assumes with hindsight bias that the government knew Magistrate Judge Spaeth's reasons for denying the warrant before ever seeking this warrant. It ignores that the government addressed data transferability concerns in this application, essentially negating the probable cause determination in the Central District of California. And it assumes that the government acted in bad faith. It did not. Instead, the government reasonably sought a new warrant

in the district where the investigation is based, where the defendant resides, and where a magistrate judge previously issued two search warrants covering the Target Device—all while strengthening its probable cause showing and disclosing the previous denial. Nothing more is required by the Fourth Amendment, Rule 41, or their progeny.

## **<u>CONCLUSION</u>**

For these reasons, the government respectfully requests that this Court reverse the Magistrate Court's decision and issue the requested search warrant.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC Bar No. 481052

GREGORY P. ROSEN
ASSISTANT UNITED STATES ATTORNEY
CHIEF, CAPITOL SIEGE SECTION

By:    */s/ Jake E. Struebing*
JAKE E. STRUEBING
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, DC 20530
D.C. Bar No. 1673297
(202) 252-6931
Jake.Struebing@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that, on May 28, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification to all counsel of record.

By:       */s/ Jake E. Struebing*
                 JAKE E. STRUEBING
                 Assistant United States Attorney
                 601 D Street, N.W.
                 Washington, DC 20530
                 D.C. Bar No. 1673297
                 (202) 252-6931
                 Jake.Struebing@usdoj.gov